# BALDWIN v. ALABAMA

No. 84–5743.   Argued March 27, 1985—Decided June 17, 1985

BLACKMUN, J., delivered the opinion of the Court, in which WHITE, POWELL, REHNQUIST, and O'CONNOR, JJ., joined. BURGER, C. J., filed an opinion concurring in the judgment, *post,* p. 390. BRENNAN, J., filed a dissenting opinion, *post,* p. 392. STEVENS, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post,* p. 393.

*John L. Carroll* argued the cause and filed a brief for petitioner.

*Edward E. Carnes,* Assistant Attorney General of Alabama, argued the cause for respondent. With him on the brief was *Charles A. Graddick,* Attorney General.

JUSTICE BLACKMUN delivered the opinion of the Court.

Between 1976 and 1981, an Alabama statute required a jury that convicted a defendant of any one of a number of specified crimes "with aggravation" to "fix the punishment at death." Ala. Code § 13–11–2(a) (1975).[1] The "sentence"

---

[1] The originating statute was 1975 Ala. Acts, No. 213, effective March 7, 1976. Act No. 213 was enacted in response to this Court's decision in *Furman* v. *Georgia,* 408 U. S. 238 (1972), and revised the State's death-penalty statutes. Chapter 11 of Title 13 of the Alabama Code, as it thereafter stood, was repealed in its entirety and replaced by new death-penalty provisions set forth in 1981 Ala. Acts, No. 81–178, effective July 1, 1981. The repeal did not moot the present case because petitioner's offense was committed and his sentence was imposed in 1977 while the 1975 Act was in effect. See 1981 Ala. Acts, §§ 19 and 20, codified as Ala. Code, § 13A–5–57 (1982).

imposed by the jury, however, was not dispositive. Instead, "[n]otwithstanding the fixing of the punishment at death by the jury," § 13–11–4, the trial judge then was to hear evidence of aggravating and mitigating circumstances and, after weighing those circumstances, to sentence the defendant to death or to life imprisonment without parole.

This case concerns the constitutionality of the peculiar and unusual requirement of the 1975 Alabama Act that the jury "shall fix the punishment at death," even though the trial judge is the actual sentencing authority.[2] The United States Court of Appeals for the Eleventh Circuit ruled that the scheme was facially unconstitutional. *Ritter* v. *Smith*, 726 F. 2d 1505, 1515–1517, cert. denied, 469 U. S. 869 (1984). Shortly thereafter, however, the Supreme Court of Alabama, with two dissenting votes, ruled to the contrary in the present case. *Ex parte Baldwin*, 456 So. 2d 129, 138–139 (1984). We granted certiorari to resolve this significant conflict. 469 U. S. 1085 (1984).

# I

## A

The facts are sordid, but a brief recital of them must be made. Petitioner Brian Keith Baldwin, then 18 years of age, escaped from a North Carolina prison camp on Saturday, March 12, 1977. That evening, he and a fellow escapee, Edward Horsley, came upon 16-year-old Naomi Rolon, who was having trouble with her automobile. The two forcibly took over her car and drove her to Charlotte, N. C. There, both men attempted to rape her, petitioner sodomized her, and the two attempted to choke her to death. They then ran over her with the car, locked her in its trunk, and left

---

[2] Our own research has disclosed no other death-penalty statute currently in effect that *requires* the jury to return a death "sentence," but then has the judge make the actual sentencing decision. Indeed, as is noted herein, Alabama has changed its death-penalty scheme and no longer has the requirement.

her there while they drove through Georgia and Alabama. Twice, when they heard the young woman cry out, they stopped the car, opened the trunk, and stabbed her repeatedly. On Monday afternoon, they stole a pickup truck, drove both vehicles to a secluded spot, and, after again using the car to run over the victim, cut her throat with a hatchet. She died after this 40-hour ordeal.

Petitioner was apprehended the following day driving the stolen truck. He was charged with theft. While in custody, he confessed to the victim's murder and led the police to her body. He was then indicted for "robbery . . . when the victim is intentionally killed," a capital offense, § 13–11–2(a)(2), and was tried before a jury in Monroe County. At the close of the evidence regarding guilt or innocence, the judge instructed the jury that if it found the petitioner guilty, "the Legislature of the State of Alabama has said this is a situation [in] which . . . the punishment would be death by electrocution," Tr. 244–245, and the jury therefore would be required to sentence petitioner to death. *Id.*, at 242. The jury found petitioner guilty, in the terms of the statute, of robbery with the aggravated circumstance of intentionally killing the victim, and returned a verdict form that stated: "We, the Jury, find the defendant guilty as charged in the indictment and fix his punishment at death by electrocution." App. 4.

B

Under Alabama's 1975 Death Penalty Act, once a defendant was convicted of any one of 14 specified aggravated offenses, see Ala. Code § 13–11–2(a) (1975), and the jury returned the required death sentence, the trial judge was obligated to hold a sentencing hearing:

"[T]he court shall thereupon hold a hearing to aid the court to determine whether or not the court will sentence the defendant to death or to life imprisonment without parole. In the hearing, evidence may be presented as to any matter that the court deems relevant to

sentence and shall include any matters relating to any of the aggravating or mitigating circumstances enumerated in sections 13–11–6 and 13–11–7." § 13–11–3.

The judge was then required to sentence the defendant to death or to life imprisonment without parole:

"Notwithstanding the fixing of the punishment at death by the jury, the court, after weighing the aggravating and mitigating circumstances, may refuse to accept the death penalty as fixed by the jury and sentence the defendant to life imprisonment without parole, which shall be served without parole; or the court, after weighing the aggravating and mitigating circumstances, and the fixing of the punishment at death by the jury, may accordingly sentence the defendant to death." § 13–11–4.

If the court imposed a death sentence, it was required to set forth in writing the factual findings from the trial and the sentencing hearing, including the aggravating and mitigating circumstances that formed the basis for the sentence. *Ibid.* The judgment of conviction and sentence of death were subject to automatic review by the Court of Criminal Appeals, and, if that court affirmed, by the Supreme Court of Alabama. §§ 13–11–5, 12–22–150; Ala. Rule App. Proc. 39(c). See *Beck* v. *State*, 396 So. 2d 645, 664 (Ala. 1981); *Evans* v. *Britton*, 472 F. Supp. 707, 713–714, 723–724 (SD Ala. 1979), rev'd on other grounds, 628 F. 2d 400 (CA5 1980), 639 F. 2d 221 (1981), rev'd *sub nom. Hopper* v. *Evans*, 456 U. S. 605 (1982).

## C

Following petitioner's conviction, the trial judge held the sentencing hearing required by § 13–11–3. The State reintroduced the evidence submitted at trial, and introduced petitioner's juvenile and adult criminal records, as well as Edward Horsley's statement regarding the crime. Petitioner then took the stand and testified that he had "a hard

time growing up"; that he left home at the age of 13 because his father did not like him to come home late at night; that he dropped out of school after the ninth grade; that he made a living by "street hustling"; that he had been arrested approximately 30 times; and that he was a drug addict. App. 8–10. At the conclusion of petitioner's testimony, the trial judge stated:

> "Brian Keith Baldwin, today is the day you have in court to tell this judge whatever is on your mind . . . , now is your time to tell the judge anything that you feel like might be helpful to you in the position that you find yourself in. I want to give you every opportunity in the world that I know about. . . . Anything you feel like you can tell this Judge that will help you in your present position." *Id.*, at 12.

Petitioner then complained about various aspects of his trial, and concluded: "I ain't saying I'm guilty but I might be guilty for murder but I ain't guilty for robbery down here. That's all I got to say." *Id.*, at 13.

The judge stated that "having considered the evidence presented at the trial and at said sentence hearing," *id.*, at 17–18, the court found the following aggravating circumstances: the capital offense was committed while petitioner was under a sentence of imprisonment in the State of North Carolina from which he had escaped; petitioner previously had pleaded guilty to a felony involving the use of violence to the person; the capital offense was committed while petitioner was committing a robbery or in flight after the robbery; and the offense was especially heinous, atrocious, or cruel.[3] The judge found that petitioner's age—18 at the

---

[3] The sentencing judge found, as an additional aggravating factor, that petitioner had been adjudged delinquent in juvenile proceedings after being charged with kidnaping and rape. The Alabama Court of Criminal Appeals ruled that the delinquency adjudication was not valid as an aggravating circumstance, but held that the judge's consideration of it was

time of the crime—was the only mitigating circumstance. *Id.*, at 18. He then stated:

"The Court having considered the aggravating circumstances and the mitigating circumstances and after weighing the aggravating and mitigating circumstances, it is the judgment of the Court that the aggravating circumstances far outweigh the mitigating circumstances and that the death penalty as fixed by the jury should be and is hereby accepted." *Ibid.*

The Supreme Court of Alabama eventually affirmed the conviction and sentence. 456 So. 2d 129 (1984).[4] In his argument to that court, petitioner contended that the 1975 Act was facially invalid. Tracking the reasoning of the Eleventh Circuit in *Ritter* v. *Smith*, 726 F. 2d, at 1516–1517, he argued that the jury's mandatory sentence was unconstitutional because it was unguided, standardless, and reflected no consideration of the particular defendant or crime, and that the judge's sentence was unconstitutional because it was based in part upon consideration of the impermissible jury sentence and was infected by it. The court rejected petitioner's argu-

---

harmless error. 456 So. 2d 117, 125–128 (1983), aff'd, 456 So. 2d 129 (Ala. 1984). That issue was not raised in the petition for certiorari here, and we have no reason to consider it.

[4] Petitioner's conviction and sentence were affirmed initially by the Alabama Court of Criminal Appeals, 372 So. 2d 26 (1978), and by the Supreme Court of Alabama, 372 So. 2d 32 (1979). This Court, however, 448 U. S. 903 (1980), vacated and remanded the case for reconsideration in the light of *Beck* v. *Alabama*, 447 U. S. 625 (1980), which held unconstitutional a clause in Alabama's 1975 Act that precluded the jury from considering lesser included noncapital offenses. On remand, the Court of Criminal Appeals reversed the judgment of conviction on the basis of *Beck*. 405 So. 2d 699 (1981). After this Court ruled that due process requires a lesser included offense instruction only when warranted by the evidence, *Hopper* v. *Evans*, 456 U. S. 605 (1982), the Court of Criminal Appeals granted rehearing, rescinded its earlier reversal, and reaffirmed petitioner's conviction and sentence. 456 So. 2d 117 (1983). The Supreme Court of Alabama affirmed that decision, 456 So. 2d 129 (1984), and it is that judgment which we now review.

ments, holding that even though the jury had no discretion regarding the "sentence" it would impose, the sentencing procedure was saved by the fact that it was the trial judge who was the true sentencing authority, and he considered aggravating and mitigating circumstances before imposing sentence. 456 So. 2d, at 139.[5]

## II

If the jury's "sentence" were indeed the dispositive sentence, the Alabama scheme would be unconstitutional under the principles announced in *Woodson* v. *North Carolina*, 428 U. S. 280 (1976) (plurality opinion), and *Roberts (Stanislaus)* v. *Louisiana*, 428 U. S. 325 (1976) (plurality opinion). See

---

[5] The Court of Criminal Appeals, as has been noted in the text, must review the decision of a trial court that imposes the death penalty, § 12–22–150, and if that court affirms the sentence, certiorari review by the Supreme Court of Alabama is automatic. Ala. Rule App. Proc. 39(c). Both appellate courts "review . . . the aggravating and mitigating circumstances found in the case by the trial judge" and independently weigh those circumstances to determine whether the imposition of a death sentence is appropriate. *Jacobs* v. *State*, 361 So. 2d 640, 647 (Ala. 1978) (Torbert, C. J., concurring in part and dissenting in part), cert. denied, 439 U. S. 1122 (1979); see also *Beck* v. *State*, 396 So. 2d 645, 664 (Ala. 1981). In reviewing petitioner's sentence, neither appellate court gave any indication of including the jury's "sentence" in the weighing. In describing its review of petitioner's sentence, the Court of Criminal Appeals stated:

"We have reviewed the aggravating and mitigating circumstances set out in the record and the trial court's findings relative to those circumstances. . . . After review of the hearing on aggravating and mitigating circumstances, we find no error on the part of the trial court in reaching the conclusion that the aggravating circumstances far outweigh the mitigating circumstances in this case. The sentence fits the crime." 372 So. 2d, at 32.

Upon reaffirming petitioner's conviction in light of *Hopper* v. *Evans*, 456 U. S. 605 (1982), the Court of Criminal Appeals again noted its obligation to weigh independently the aggravating and mitigating circumstances, and found that petitioner's death sentence was appropriate. 456 So. 2d, at 128. The State Supreme Court also found that the "aggravating circumstances greatly outweighed the mitigating circumstances." 456 So. 2d, at 140.

also *Roberts (Harry)* v. *Louisiana*, 431 U. S. 633 (1977). In *Woodson*, the Court held that North Carolina's sentencing scheme, which imposed a mandatory death sentence for a broad category of homicidal offenses, violated the Eighth and Fourteenth Amendments in three respects. First, such mandatory schemes offend contemporary standards of decency, as evidenced by the frequency with which jurors avoid the imposition of mandatory death sentences by disregarding their oaths and refusing to convict, and by the consistent movement of the States and Congress away from such schemes. 428 U. S., at 288–301. Second, by refusing to convict defendants who the jurors think do not deserve the death penalty, juries exercise unguided and unchecked discretion regarding who will be sentenced to death. *Id.*, at 302–303. Third, such mandatory schemes fail to allow particularized consideration of the character and record of the defendant and the circumstances of the offense. *Id.*, at 303–305. Alabama's requirement that the jury impose a mandatory sentence for a wide range of homicides, standing alone, would suffer each of those defects.

The jury's mandatory "sentence," however, does not stand alone under the Alabama scheme. Instead, as has been described above, the trial judge thereafter conducts a separate hearing to receive evidence of aggravating and mitigating circumstances, and determines whether the aggravating circumstances outweigh the mitigating circumstances. The judge's discretion is guided by the requirement that the death penalty be imposed only if the judge finds the aggravating circumstance that serves to define the capital crime—in this case the fact that the homicide took place during the commission of a robbery—and only if the judge finds that the definitional aggravating circumstance, plus any other specified aggravating circumstance,[6] outweighs

[6] See § 13–11–6. The 1975 Act required the judge to weigh aggravating circumstances specified in § 13–11–6 against mitigating circumstances. The Alabama courts interpreted the Act, however, to require the judge to

any statutory and nonstatutory mitigating circumstances. § 13–11–4. Petitioner accordingly does not argue that the judge's discretion under § 13–11–4 is not "suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action," *Gregg* v. *Georgia*, 428 U. S. 153, 189 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.). Nor is there any issue before this Court that the 1975 Act did not allow "the type of individualized consideration of mitigating factors" by the sentencing judge that has been held constitutionally indispensable in capital cases.[7] *Lockett* v. *Ohio*, 438 U. S. 586, 606 (1978) (plurality opinion); see also

find the presence of the § 13–11–2(a) definitional aggravating circumstance (in other words, to agree with the jury's finding that the defendant is guilty of the offense charged in the indictment) before weighing any § 13–11–6 aggravating circumstances against mitigating circumstances. *Ex parte Kyzer*, 399 So. 2d 330 (Ala. 1981). Generally, the definitional aggravating circumstances of § 13–11–2(a) have counterparts in § 13–11–6. Where there is no counterpart, the judge must find the definitional aggravating circumstance or no death sentence can be imposed, even though § 13–11–6 aggravating circumstances outweigh mitigating circumstances. 399 So. 2d, at 337.

[7] In his statement of facts, petitioner asserts that the sentencing judge limited his consideration of mitigating circumstances to those specified by § 13–11–7, in violation of *Lockett* v. *Ohio*, 438 U. S. 586 (1978) (plurality opinion). That issue was not addressed by the Supreme Court of Alabama in the decision under review, and was not raised in the petition for certiorari. We have no reason to consider the issue here. We note, however, that in its first review of petitioner's sentence, the Court of Criminal Appeals held that petitioner "was given the opportunity to present *any* mitigating circumstance" (emphasis supplied), and that the 1975 Act did not preclude consideration of any aspect of petitioner's character or of the circumstances of the offense. 372 So. 2d, at 32. We already have noted that the sentencing judge asked petitioner to "tell the judge anything that you feel like might be helpful to you in the position that you find yourself in." App. 12. Petitioner's counsel three times asked petitioner while he was on the stand if there was "anything else you would like for the judge to know or to be able to tell him at this point?" *Id.*, at 10–11. Finally, at the conclusion of petitioner's testimony, the judge asked petitioner's counsel if he had "anything else that you might be able to offer in the way of mitigating circumstances." *Id.*, at 14.

*Eddings* v. *Oklahoma,* 455 U. S. 104 (1982); *Woodson* v. *North Carolina,* 428 U. S., at 304 (plurality opinion).

Petitioner's challenge to the Alabama scheme rests instead on the provision of the 1975 Act that allows the judge to weigh "the aggravating and mitigating circumstances, and the fixing of the punishment at death by the jury" in determining whether death is the appropriate sentence. § 13–11–4. This Court has stated that a death sentence based upon consideration of "factors that are constitutionally impermissible or totally irrelevant to the sentencing process, such as for example the race, religion, or political affiliation of the defendant," would violate the Constitution. *Zant* v. *Stephens,* 462 U. S. 862, 885 (1983). Relying upon *Zant,* petitioner contends that, because the jury's mandatory "sentence" would be unconstitutional standing alone, it is an impermissible factor for the trial judge to consider, as the statute appears to require, in the sentencing process. That argument conceivably might have merit if the judge actually were required to consider the jury's "sentence" as a recommendation as to the sentence the jury believed would be appropriate, cf. *Proffitt* v. *Florida,* 428 U. S. 242 (1976), and if the judge were obligated to accord some deference to it. The jury's verdict is not considered in that fashion, however, as the Alabama appellate courts' construction of the Act, as well as the judge's statements regarding the process by which he arrived at the sentence, so definitely indicates.

A

The language of § 13–11–4, to be sure, in so many words does not preclude the sentencing judge from considering the jury's "sentence" in determining whether the death penalty is appropriate. The first clause of the section—"the court, after weighing the aggravating and mitigating circumstances, may refuse to accept the death penalty as fixed by the jury and sentence the defendant to life imprisonment

without parole"—does not authorize or require the court to weigh the jury's "sentence" in determining whether to refuse to impose the death penalty. The second clause—"or the court, after weighing the aggravating and mitigating circumstances, and the fixing of the punishment at death by the jury, may accordingly sentence the defendant to death"— does seem to authorize consideration of the jury's "sentence." It is not clear whether the second clause allows consideration of the jury's "sentence" only if the weighing of the aggravating and mitigating circumstances authorized in the first clause has indicated that the "sentence" should not be rejected, or whether the second clause allows the judge to ignore the first clause and count the jury's "sentence" as a factor, similar to an aggravating circumstance, weighing in favor of the death penalty. We therefore look to the Alabama courts' construction of § 13–11–4. See *Proffitt* v. *Florida, supra; Jurek* v. *Texas,* 428 U. S. 262, 272–273 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.).

The Alabama appellate courts have interpreted the 1975 Act expressly to mean that the sentencing judge is to impose a sentence without regard to the jury's mandatory "sentence." The Alabama Court of Criminal Appeals has stated: "The jury's function is only to find guilt or innocence. The jury is not the sentencing authority." *Jacobs* v. *State,* 361 So. 2d 607, 631 (1977), aff'd, 361 So. 2d 640 (Ala. 1978), cert. denied, 439 U. S. 1122 (1979). Indeed, the court has gone so far as to state:

"No sentence exists until the pronouncement by the trial judge at the conclusion of the sentence hearing. It is for this reason the court cannot be said to be commuting a sentence of death imposed by the jury, but, in truth and in fact, it is sentencing the accused after a jury's finding of guilt." *Beck* v. *State,* 365 So. 2d 985, 1005, aff'd, 365 So. 2d 1006 (Ala. 1978), rev'd on other grounds, 447 U. S. 625 (1980).

The court further has described the judge's role as follows:

"The sentencing hearing is one of the most important and critical stages under Alabama's death penalty law. The guilt stage has passed. Now an experienced trial judge must consider the particularized circumstances surrounding the offense and the offender and determine if the accused is to die or be sentenced to life imprisonment without parole. . . . The trial evidence must be reviewed to determine all of the aggravating circumstances leading up to and culminating in the death of the victim and then all the mitigating circumstances must be considered in determining if any outweigh the aggravating circumstances so found in the trial court's findings of fact." *Richardson* v. *State*, 376 So. 2d 205, 224 (1978), aff'd, 376 So. 2d. 228 (Ala. 1979).

Conspicuously absent from the court's description of the judge's duty is any mention of according weight or deference to the jury's "sentence."

The Supreme Court of Alabama agrees that "the jury is not the sentencing authority in . . . Alabama," and has described the sentencing judge not as a reviewer of the jury's "sentence," but as *the* sentencer:

"In Alabama, the jury is not the body which finally determines which murderers must die and which must not. In fact, Alabama's statute *mandatorily* requires the court to 'hold a hearing to aid the court to determine whether or not the court will *sentence* the defendant to death or to life imprisonment without parole,' and specifically provides that the court may refuse to accept the death penalty as fixed by the jury and may 'sentence' the defendant to death or life without parole. Code of Ala. 1975, § 13–11–4. That section provides that if the *court* imposes a 'sentence of death' it must set forth, in writing, the basis for the sentence." *Jacobs* v. *State*, 361 So. 2d, at 644 (emphasis in original; footnote omitted).

See also *Ritter* v. *State*, 429 So. 2d 928, 935–936 (Ala. 1983); *Beck* v. *State*, 396 So. 2d, at 659.

## B

In this case, moreover, it is clear that the sentencing judge did not interpret the statute as requiring him to consider the jury's "sentence," because he never described the "sentence" as a factor in his deliberations. After the jury returned its verdict, the trial judge informed petitioner:

> "Let me say this: The jury has found you guilty of the crime of robbery with the aggravated circumstances of intentionally killing the victim . . . and set your punishment at death by electrocution but the law of this state provides first that there will be an additional hearing in this case at which time *the Court will consider aggravating circumstances, extenuating and all other circumstances, concerning the commission of this particular offense*" (emphasis added). Tr. 249.

In addition, in imposing the sentence, the judge stated:

> "The Court *having considered the aggravating circumstances and the mitigating circumstances and after weighing the aggravating and mitigating circumstances*, it is the judgment of the Court that the aggravating circumstances far outweigh the mitigating circumstances and that the death penalty as fixed by the jury should be and is hereby accepted" (emphasis added). App. 18.

None of these statements indicates that the judge considered the jury's verdict to be a factor that he added, or that he was required to add, to the scale in determining the appropriateness of the death penalty, or that he believed the jury's verdict was entitled to a presumption of correctness. The judge, of course, knew the Alabama system and all that it signified, knew that the jury's "sentence" was mandatory, and knew that it did not reflect consideration of any mitigating circumstance. The judge logically, therefore, would not

have thought that he owed any deference to the jury's "sentence" on the issue whether the death penalty was appropriate for petitioner.[8]

### III

Petitioner contends, nevertheless, that a judge's decision to impose the death penalty *must* be swayed by the fact that the jury returned a "sentence" of death. He points to this Court's opinion in *Beck* v. *Alabama*, 447 U. S. 625, 645 (1980), which expressed some skepticism about the influence the jury's "sentence" would have on a judge. *Beck* held unconstitutional the provision of the 1975 Act that precluded the jury from considering lesser included noncapital offenses. The Court reasoned that the provision violated due process, because where the jury's only choices were to convict a defendant of the capital offense and "sentence" him to death, or to acquit him, but the evidence would have supported a lesser included offense verdict, the factfinding process was tainted with irrelevant considerations. On the one hand, the Court reasoned, the unavailability of the option of convicting on a lesser included offense may encourage the jury to convict the defendant of a capital crime because it believes that the defendant is guilty of some serious crime and should be punished. On the other hand, the apparently mandatory nature of the death penalty may encourage the jury to acquit because it believes the defendant does not deserve the death penalty. The unavailability of the lesser included offense option, when it is warranted by the evidence, thus "introduce[s] a level of uncertainty and unreliability into the factfinding process that cannot be tolerated in a capital case." *Id.*, at 642–643.

In so holding, this Court rejected Alabama's argument that, even if the unavailability of a lesser included offense

---

[8] We express no view regarding the constitutionality of a death sentence imposed by a judge who did consider the jury's verdict in this Alabama statutory structure as a factor that weighed in favor of the imposition of the death penalty.

led a jury erroneously to convict a defendant, the fact that the judge was the true sentencer would ensure that the defendant was not improperly sentenced to death. It reasoned:

> "[I]t is manifest that the jury's verdict must have a tendency to motivate the judge to impose the same sentence that the jury did. Indeed, according to statistics submitted by the State's Attorney General, it is fair to infer that the jury verdict will ordinarily be followed by the judge even though he must hold a separate hearing in aggravation and mitigation before he imposes sentence. Under these circumstances, we are unwilling to presume that a post-trial hearing will always correct whatever mistakes have occurred in the performance of the jury's factfinding function." *Id.*, at 645–646 (footnote omitted).

This Court's concern in *Beck* was that the judge would be inclined to accept the jury's factual finding that the defendant was guilty of a capital offense, not that the judge would be influenced by the jury's "sentence" of death. To "correct" an erroneous guilty verdict, the sentencing judge would have to determine that death was an inappropriate punishment, not because mitigating circumstances outweighed aggravating circumstances, but because the defendant had not been proved guilty beyond a reasonable doubt. Obviously, a judge will think hard about the jury's guilty verdict before basing a sentence on the belief that the defendant was not proved guilty of the capital offense. Indeed, the judge should think hard before rejecting the guilty verdict, because the determination of guilt is properly within the province of the jury, and the jury heard the same evidence regarding guilt as the judge.

It does not follow, however, that the judge will be swayed to impose a sentence of death merely because the jury returned a mandatory death "sentence," when it had no opportunity to consider mitigating circumstances. The judge

knows that determination of the appropriate sentence is not within the jury's province, and that the jury does not consider evidence in mitigation in arriving at its "sentence." The jury's "sentence" means only that the jury found the defendant guilty of a capital crime—that is, that it found the fact of intentional killing in the course of a robbery—and that if the judge finds that the aggravating circumstances outweigh the mitigating circumstances, the judge is authorized to impose a sentence of death. The "sentence" thus conveys nothing more than the verdict of guilty, when it is read in conjunction with the provisions of the 1975 Act making the offense a capital crime, would convey. It defies logic to assume that a judge will be swayed to impose the death penalty by a "sentence" that has so little meaning. Despite its misdescribed label, it is not a sentence of death.

Petitioner also argues that the requirement that the jury return a "sentence" of death "blurs" the issue of guilt with the issue whether death is the appropriate punishment, and may cause the jury arbitrarily to nullify the mandatory death penalty by acquitting a defendant who is proved guilty, but who the jury, without any guidance, finds undeserving of the death penalty. Petitioner's argument stems from *Woodson*, where the plurality opinion noted that American juries "persistently" have refused to convict "a significant portion" of those charged with first-degree murder in order to avoid mandatory death-penalty statutes, and expressed concern that the unguided exercise of the power to nullify a mandatory sentence would lead to the same "wanton" and "arbitrary" imposition of the death penalty that troubled the Court in *Furman*. 428 U. S., at 302–303. The Alabama scheme, however, has not resulted in such arbitrariness. Juries deliberating under the 1975 statute did not act to nullify the mandatory "sentence" by refusing to convict in a significant number of cases; indeed, only 2 of the first 50 defendants tried for capital crimes during the time the 1975 Act was in effect were acquitted. See *Beck* v. *Alabama*, 447 U. S., at 641, n. 18. Thus, while the specter of a mandatory

death sentence may have made juries more prone to acquit, thereby benefiting the two defendants acquitted, it did not render Alabama's scheme unconstitutionally arbitrary.

## IV

The wisdom and phraseology of Alabama's curious 1975 statute surely are open to question, as Alabama's abandonment of the statutory scheme in 1981 perhaps indicates.[9] This Court has made clear, however, that "we are unwilling to say that there is any one right way for a State to set up its capital-sentencing scheme." *Spaziano* v. *Florida*, 468 U. S. 447, 464 (1984). See also *Zant* v. *Stephens*, 462 U. S., at 884; *Gregg* v. *Georgia*, 428 U. S., at 195 (opinion of Stewart, POWELL, and STEVENS, JJ.). Alabama's requirement that the jury return a "sentence" of death along with its guilty verdict, while unusual, did not render unconstitutional the death sentence the trial judge imposed after independently considering petitioner's background and character and the circumstances of his crime.

---

[9] Following this Court's decisions in *Beck* v. *Alabama*, 447 U. S. 625 (1980), and *Hopper* v. *Evans*, 456 U. S. 605 (1982), the Supreme Court of Alabama held that in a capital case in which the jury is instructed regarding a lesser included noncapital offense

"the requirement in § 13–11–2(a), that the jury 'shall fix the punishment at death' [is construed] to be *permissive and to mean that the jury cannot fix punishment at death until it takes into account the circumstances of the offense together with the character and propensity of the offender, under sentencing procedures which will miminize the risk of an arbitrary and capricious imposition of the death penalty*" (emphasis in original). *Beck* v. *State*, 396 So. 2d, at 660.

The Alabama Legislature then repealed the 1975 Act, and replaced it with a trifurcated proceeding in which the jury first determines guilt or innocence, and, if it returns a guilty verdict, hears evidence concerning aggravation and mitigation. On the basis of that evidence, the jury issues an advisory sentence. If the verdict is for death, that sentence is not binding on the trial judge, who then is required to hold another hearing regarding aggravating and mitigating circumstances before determining the actual sentence. Ala. Code §§ 13A–5–39 to 13A–5–59 (1982).

The judgment of the Supreme Court of Alabama is affirmed.

*It is so ordered.*

CHIEF JUSTICE BURGER, concurring in the judgment.

It seems to me that the Court evades the constitutional issue presented, see *ante*, at 386, n. 8, and resolves this case on the basis of a construction of state law (a) that is inconsistent with the relevant state statute, (b) that does not appear in the opinion of the Alabama Supreme Court in this or any other case, and (c) that was not asserted by the State in its arguments before this Court.

The statute at issue states:

> "*Notwithstanding the fixing of punishment at death by the jury*, the court, after weighing the aggravating and mitigating circumstances, may *refuse to accept the death penalty as fixed by the jury* and sentence the defendant to life imprisonment without parole, which shall be served without parole; or the court, after weighing the aggravating and mitigating circumstances, *and the fixing of the punishment at death by the jury*, may accordingly sentence the defendant to death." Ala. Code § 13–11–4 (1975) (emphasis added).

The statutory language, particularly the italicized portions, clearly contemplates that a trial judge sentencing a capital defendant is to consider the jury's "fixing of the punishment at death" along with the aggravating and mitigating circumstances. But according to the Court's opinion, the statute is ambiguous as to whether the judge must consider the jury's "sentence" in all cases or only in cases where he has decided that the death penalty may be appropriate. See *ante*, at 383. Even if the Court is correct on this point, the ambiguity is irrelevant in every case, including this one, in which the trial judge *does in fact* impose the death sentence.

Given the clear import of the statutory language, it is difficult to see any reason to depart from the statute, absent an equally clear contrary statement by a state court. Through-

out its discussion of Alabama case law, however, the Court simply draws inferences from omissions. No Alabama decision holds affirmatively that the trial judge is *not* to consider the jury's "sentence."* The passages quoted by the Court, see *ante,* at 383–385, establish only that the judge, not the jury, is the sentencing authority. This proposition is not inconsistent with the judge's having to consider the jury's "sentence" in the sentencing process.

The opinion of the Alabama Supreme Court does not support the Court's construction of Alabama law. Indeed, the Supreme Court's opinion quotes the statement of the Court of Appeals for the Eleventh Circuit that "'the statute [§ 13–11–4] requires the judge to weigh the mandatory death sentence factor in the balance with his consideration of aggravating and mitigating circumstances in deciding to impose the death penalty.'" *Ex parte Baldwin,* 456 So. 2d 129, 138 (Ala. 1984) (quoting *Ritter* v. *Smith,* 726 F. 2d 1505, 1516 (CA11 1984)); accord, 456 So. 2d, at 141 (Jones, J., concurring in part and dissenting in part). The Alabama court did not refute this construction of the statute; instead, it upheld the statute on the grounds that the jury's "sentence" was not binding on the trial judge and that the statute required the trial judge to consider the circumstances of the particular offense and the character and propensities of the offender. There is no inconsistency between this reasoning and the sentencing judge's having to consider the jury's conclusion along with the other relevant factors.

If state law were as clear as the Court suggests, one would expect the State's otherwise thorough brief to include some support for the Court's view of Alabama law. According to the petitioner, the "very flaw which kills the statute" is that it requires the trial judge to consider the jury's "sentence" "as a factor in the sentencing process." Brief for Petitioner 13. In the face of this contention, it seems that if "[t]he

---

*The same is true of the statements of the trial judge in this case. See *ante,* at 385–386.

Alabama appellate courts have interpreted the 1975 Act *expressly* to mean that the sentencing judge is to impose a sentence *without regard* to the jury's mandatory 'sentence,'" *ante*, at 383 (emphasis added), the State would have mentioned that fact in its arguments here. It did not.

The Court should decide whether the 1975 Alabama statute is unconstitutional *because* it requires the trial judge to consider the jury's "sentence" in determining the sentence actually to be imposed. In my view the statute passes constitutional muster.

The 1975 statutory scheme limits capital offenses to murders involving statutorily specified aggravating circumstances. Because each capital offense already includes an aggravating circumstance in the definition of the offense, the jury's mandatory death "sentence" reflects the jury's determination that the State has proved the defined aggravating circumstance beyond a reasonable doubt. Because the trial judge must weigh that circumstance along with the other aggravating circumstances and the mitigating circumstances, *Ex parte Kyzer*, 399 So. 2d 330, 338 (Ala. 1981), it makes complete sense for the judge to take into account the jury's finding on that issue. The statute requires no more in having the trial judge take into account the jury's "sentence" in the process of weighing the aggravating and mitigating circumstances.

JUSTICE BRENNAN, dissenting.

I adhere to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976) (BRENNAN, J., dissenting), and would therefore vacate the petitioner Brian Keith Baldwin's death sentence in any event. But even if I thought otherwise, I would vacate Baldwin's death sentence imposed pursuant to Ala. Code §§ 13–11–2(a) and 13–11–4 (1975) for the reasons set forth in JUSTICE STEVENS' dissent, which I join.

JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

Under a unique statutory provision, since repealed, the jury that convicted Brian Keith Baldwin of aggravated murder was required to "fix [his] punishment at death." Ala. Code § 13–11–2(a) (1975). The trial judge was permitted either to "refuse to accept" the jury's death penalty or to sentence Baldwin to death "after weighing the aggravating and mitigating circumstances, and the fixing of the punishment at death by the jury." § 13–11–4. In this case, the judge decided that "the death penalty as fixed by the jury should be and hereby is accepted." App. 18.

In my dissenting opinion in *Spaziano* v. *Florida*, 468 U. S. 447, 467 (1984), I explained at some length why the jury, as the spokesman for the community, plays a critical role in the process of deciding whether to impose the death penalty on a defendant convicted of a capital offense.[1] It is my view that no death sentence is constitutionally valid unless it has the sanction of a jury. Even if I did not hold that view, however, I could not accept the Court's conclusion that a "misdescribed" jury sentence of death does not infect a judge's subsequent decision to "accept" that sentence. *Ante*, at 388.

---

[1] "Because it is the one punishment that cannot be prescribed by a rule of law as judges normally understand such rules, but rather is ultimately understood only as an expression of the community's outrage—its sense that an individual has lost his moral entitlement to live—I am convinced that the danger of an excessive response can only be avoided if the decision to impose the death penalty is made by a jury rather than by a single governmental official. This conviction is consistent with the judgment of history and the current consensus of opinion that juries are better equipped than judges to make capital sentencing decisions. The basic explanation for that consensus lies in the fact that the question whether a sentence of death is excessive in the particular circumstances of any case is one that must be answered by the decisionmaker that is best able to 'express the conscience of the community on the ultimate question of life or death.' *Witherspoon* v. *Illinois*, 391 U. S. 510, 519 (1968) (footnote omitted)." 468 U. S., at 468–470 (footnotes omitted).

As the Court demonstrates, it would be patently unconstitutional to uphold the death sentence in this case if the jury's mandatory capital verdict were dispositive. *Ante*, at 379–380. In my view, it is also unconstitutional to present an elected trial judge who might otherwise regard the arguments for and against a death sentence as equally balanced with the burden of rejecting a jury verdict of this kind before he can impose a sentence of life.

One reason that we have condemned mandatory jury death sentences in the past is that they are unintelligible. When a jury that convicts a defendant of the crime charged must impose a sentence of death, there is no assurance that its sentence represents the jury's belief that death is the "just and appropriate sentence." *Woodson* v. *North Carolina*, 428 U. S. 280, 304 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.). For when the jury has followed proper instructions, conviction should mean nothing more than that the jury believed the defendant guilty beyond a reasonable doubt; unless the jury is willing to violate a sworn oath and nullify the evidence, the death sentence is automatic. See *Beck* v. *Alabama*, 447 U. S. 625, 642, 644 (1980). Of course, even though the verdict is automatic, the jury might believe that the defendant should die.[2] But even if the jury did

---

[2] " '[M]ost, if not all, jurors at this point in our history perhaps equally abhor setting free a defendant where the evidence establishes his guilt of a serious crime. We have no way of knowing . . . .' " *Beck* v. *Alabama*, 447 U. S., at 642, quoting *Jacobs* v. *State*, 361 So. 2d 640, 652 (Ala. 1978) (Shores, J., dissenting), cert. denied, 439 U. S. 1122 (1979). In this case, Baldwin's jury was told that death was the mandatory sentence upon conviction. 1 Record 20 ("This is a capital crime under the law of this state and the punishment upon conviction is death by electrocution. There are no lesser included offenses"). The jury was not informed that the judge could later refuse its death sentence. See 2 *id.*, at 237–247, 298–303; *Beck, supra,* at 639, n. 15. The jury's subsequent verdict stated: "We, the Jury, find the defendant guilty as charged in the indictment, and fix his punishment at death by electrocution." App. 4. Given these facts, I cannot agree with the Court's view that the jury's sentence necessarily "conveys nothing more than the verdict of guilty." *Ante*, at 388. It may or it

intend the consequent death sentence in some sense, it did so with "no guidance whatsoever," *id.*, at 640, and without the "particularized consideration" of relevant factors that the Constitution requires in capital cases. *Woodson, supra,* at 303; see *Roberts* v. *Louisiana,* 428 U. S. 325, 333–336 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.). Thus a mandatory jury death sentence cannot be said to represent the sort of considered community judgment the Court has approved in the past. See *Jurek* v. *Texas,* 428 U. S. 262, 271–275 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.); *Witherspoon* v. *Illinois,* 391 U. S. 510, 519 (1968).[3] Instead, such a mandatory sentence is so "uncertai[n] and unreliab[le]" that it "cannot be tolerated in a capital case." *Beck, supra,* at 643.

The arbitrariness and uncertainty of the message conveyed by a mandatory jury death sentence makes such a sentence a constitutionally impermissible factor in a sentencing judge's deliberations. Rather than representing the considered

---

may not. The unavoidable uncertainty of the message is one reason such a sentence creates constitutional difficulties.

[3] Justice Jones of the Alabama Supreme Court relied on similar reasoning to make a slightly different nonconstitutional point in his dissent from affirmance of Baldwin's death sentence:

"In my opinion, [the Court's result] overlooks the statutory scheme . . . that gives the jury a vital role in the sentencing process. It may well be that, under the United States Supreme Court's guidelines for administering the death penalty, the [Alabama] statutory scheme would meet federal constitutional muster if the jury's role in the sentencing process had been omitted altogether (assuming, of course, that the statute prescribes an appropriate bifurcated sentencing hearing before the trial judge). But it *was not* omitted . . . .

.        .        .        .

"Obviously, the legislature, in retaining the jury's role in the two-step sentencing process, intended for the trial judge, as the final sentencing authority, to have the benefit of the community's input as expressed in the jury's 'recommendation' of sentence. That legislative will—as a due process requisite—is thwarted where the jury is legally bound to 'recommend' only the death penalty." *Ex parte Baldwin,* 456 So. 2d 129, 141–142 (1984) (concurring in part and dissenting in part) (emphasis in original).

judgment of the community based on consideration of all relevant information concerning the particular offense and defendant at bar, such a sentence represents at best the jury's unguided and arbitrary judgment regarding the proper sentence, and at worst merely an unwillingness to set a violent criminal free even though the jury would not have imposed death had it had any discretion. Because the sentencing judge cannot possibly know what meaning, if any, a mandatory jury death sentence conveys, such a sentence is "totally irrelevant to the sentencing process." *Zant* v. *Stephens*, 462 U. S. 862, 885 (1983). In my view, due process of law requires that any death sentence based even in part on such a factor be set aside. *Ibid.*

The record in this case plainly indicates that the jury's sentence was, in fact, on the mind of the judge that sentenced Baldwin in 1977.[4] When the judge scheduled Baldwin's sentencing hearing, he noted that "the jury has . . . set your punishment at death by electrocution, *but . . . first*" he would hold a hearing to consider "all . . . circumstances." 2 Record 249 (emphasis added). His subsequent decision to sentence Baldwin to death was delivered not without reference to the jury's sentence, but rather in terms of "accept[ing]" the death penalty "as fixed by the jury." App. 18. Theoretical speculation regarding what the judge "logically" should have concluded regarding the jury's sentence, *ante*, at 385, is insufficient to overcome the obvious consideration demonstrated by the judge's repeated references to the jury's sentence. We do not know how the sentence weighed in the judge's deliberations, but not even the most careful parsing of words can support a conclusion that he did not "conside[r]" it at all. *Ibid.*

Moreover, it is unrealistic to maintain that such a sentence from the jury does not enter the mind of the sentencing judge. When the Court examined this same sentencing pro-

---

[4] Cf. *Eddings* v. *Oklahoma*, 455 U. S. 104, 112–114 (1982) (considering record evidence of judge's actual application of Oklahoma capital sentencing law).

vision in 1980, seven Justices agreed that "it is manifest that the jury's verdict must have a tendency to motivate the judge to impose the same sentence that the jury did." *Beck* v. *Alabama*, 447 U. S., at 645. Today, three Justices have changed their view, and the Court now maintains that "[i]t defies logic to assume that a judge will be swayed to impose the death penalty" by a jury sentence of death that was mandatory. *Ante*, at 388. I cannot so easily change my appraisal of human nature. Judges in Alabama, as in many States, are elected. Ala. Const., Amdt. No. 328, § 6.13. They are not insulated from community pressure; indeed, responsiveness and accountability to the community provide the justification for an elected judiciary.[5] Although a judge may understand that a mandatory jury sentence of death is, in some sense, meaningless (but see n. 2, *supra*), the community probably does not. A jury sentence of death is likely to be reported and understood as a real sentence of death, as it was in this case.[6]

Whether it "logically" need be so or not, *ante*, at 385, 388, the plain fact is that a judge who later decides to sentence to life in such circumstances is publicly perceived to have rejected the jury's sentence; indeed, the terms of the statute itself embody that perception. The pressures on a judge that inevitably result should not be ignored.[7] In my view,

---

[5] See, *e. g.*, P. Dubois, From Ballot to Bench: Judicial Elections and the Quest for Accountability 3, 29, 145 (1980); Sheldon & Lovrich, Judicial Accountability vs. Responsibility: Balancing the Views of Voters and Judges, 65 Judicature 470, 471 (1982).

[6] The day after the jury rendered its verdict, the two major newspapers in Alabama reported the result as "[Baldwin] gets death," The Birmingham News, Aug. 10, 1977, p. 2 and "[Baldwin] Gets Death Penalty," The Montgomery Advertiser, Aug. 10, 1977, p. 15.

[7] We approvingly quoted Justice Jones of the Supreme Court of Alabama to this effect in *Beck*, 447 U. S., at 645, n. 22, after noting that "it is fair to infer that the jury verdict will ordinarily be followed by the judge," *id.*, at 645.

"[T]o leave sentence reduction in the prerogative of the trial court is to place undue pressures upon this office. Again, admittedly, a trial judge

only the Court's distance from the realities of an elected state trial bench can explain its declaration that, as a matter of fact, a jury's mandatory sentence of death will not enter the judge's mind when he considers whether to "refuse" or "accept" the jury's sentence.

Baldwin's argument is not that a capital sentencing judge may never consider the views of a jury as to the appropriate sentence. The Court has approved a capital sentencing system in which a judge ultimately determines the appropriate punishment after receiving an advisory sentence from a fully informed and properly instructed jury. *Proffitt* v. *Florida*, 428 U. S. 242 (1976). But when the jury's sentence is mandatory—as it is here—it does *not* represent the jury's view of an "appropriate" sentence based on full information and the exercise of guided discretion. Rather than providing a sentencing judge with some arguably helpful information about the community's view, such a sentence is either misleading or, at best, irrelevant to the capital sentencing decision.[8]

must often be the bulwark of the legal system when presented with unpopular causes and adverse public opinion. This State's recent history, however, reflects the outcry of unjustified criticism attendant with a trial judge's reduction of a sentence to life imprisonment without possibility of parole, after a jury has returned a sentence of death. Clearly, this pressure constitutes an undue compulsion on the trial judge to conform the sentence which he imposes with that previously returned by the jury." *Jacobs* v. *State*, 361 So. 2d, at 650–651.

See also *Spaziano* v. *Florida*, 468 U. S., at 475, n. 14 (STEVENS, J., dissenting) ("if the jury recommends death, an elected Florida judge sensitive to community sentiment would have an additional reason to follow that recommendation"); *Ritter* v. *Smith*, 568 F. Supp. 1499, 1521 (SD Ala. 1983) (the identical claim to Baldwin's "appears to be substantial. The automatic death penalty, combined with the inclusion of that penalty in the actual sentencing formula and the sentencing judge's position with respect to the public, might in some circumstances prejudice a defendant where the sentencing decision presented a close case").

[8] Alabama argues that the mandatory jury verdict is really only a procedural mechanism by which the legislature conveys to the sentencing judge its legislative judgment that death presumptively should be the punishment when the definitional facts of capital murder are proved. Aside from the fact that there is no evidence that the legislature actually so intended

The statutory provision at issue has been repealed and is unlikely ever to be replicated. Nevertheless, 10 persons remain to be executed under its command. Because capital punishment is the most extreme and uniquely irreversible expression of societal condemnation, I continue to believe that "[i]t is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." *Gardner* v. *Florida*, 430 U. S. 349, 358 (1977) (opinion of STEVENS, J.) (emphasis added); accord, *Barefoot* v. *Estelle*, 463 U. S. 880, 938 (1983) (BLACKMUN, J., dissenting). A mandatory jury death sentence serves only to mislead the public and to complicate the task of the sentencing judge with confusing signals and irrelevant pressures. Because I believe the Constitution prohibits such influences in capital cases, I respectfully dissent.

---

the mandatory verdict, the implausibility of the legislature choosing such a clumsy means to achieve the suggested end argues against this *pendente lite* interpretation. The Alabama Supreme Court has suggested instead that this mandatory scheme was merely the legislature's response to this Court's somewhat confusing signals in *Furman* v. *Georgia*, 408 U. S. 238 (1972). See *Ritter* v. *State*, 429 So. 2d 928, 934 (Ala. 1983).

In any case, such a purpose would not save this scheme from invalidation, given the arbitrariness inherent in the means. Because every jury in this situation knows that death is the mandatory sentence and has the option of acquittal, the legislature's message will be conveyed only at the whim of any particular jury. Thus, whether or not such a legislative message would be constitutional standing alone, the constitutional procedural flaw of "unguided and unchecked jury discretion" condemned in *Woodson* v. *North Carolina*, 428 U. S. 280, 302 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.), is not removed by the State's theory.