*659 ON RETURN TO REMAND
PATTERSON, Judge.
Pursuant to our directions for remand, the trial court entered a new sentencing order, after having held another hearing with Daniels, his attorney, and a State attorney present, wherein Daniels was sentenced to death by electrocution. The court’s sentencing order, which is attached as “Appendix A,” fully complies with our directives: (1) The order contains an ample statement of the “findings of fact from the trial,” § 13-11-4, Code of Alabama 1975 (repealed); (2) the order reflects proper written findings on the existence or nonexistence of each aggravating circumstance enumerated in § 13-11-6; and (3) in the order, the court makes a specific finding as to § 13-11-7(7), determines that Daniels had no significant history of prior criminal activity, § 13-11-7(1), and clearly negates the presence of the mitigating factor enumerated in § 13-11-7(4).
Since the sentencing order is now correct and complete, it is mandated that we review the propriety of Daniels’s death sentence. In examining Daniels’s sentence, we first apply the three-prong analysis of Beck v. State, 396 So.2d 645, 664 (Ala.1980). First, Daniels was convicted of murder in the first degree wherein two or more human beings are intentionally killed by one or a series of acts which, by statutory definition and designation, is a capital *660 offense properly punishable by death under § 13-ll-2(a)(10). Second, we take judicial notice that similar crimes are being punished capitally throughout this state. See, e.g., Hill v. State, 455 So.2d 930 (Ala.Cr.App.), aff'd, 455 So.2d 938 (Ala.), cert. denied, 469 U.S. 1098, 105 S.Ct. 607, 83 L.Ed. 2d 716 (1984); Tomlin v. State, 443 So.2d 47 (Ala.Cr.App.1979), aff'd, 443 So.2d 59 (Ala.1983), cert. denied, 466 U.S. 954, 104 S.Ct. 2160, 80 L.Ed.2d 545 (1984), aff'd on return from remand, 516 So.2d 790 (Ala.Cr.App.1986) (as modified on rehearing), aff'd, 516 So.2d 797 (Ala.1987). Third, the death sentence is appropriate in relation to this particular defendant. Phillip Wayne Tomlin, who was Daniels’s accomplice, also received the death sentence for his participation in this capital offense. We find that, in reviewing Daniels's participation, his sentence is not disproportionate.
In further reviewing the propriety of Daniels’s sentence of death, we adopt the mandated inquiries of § 13A-5-53(a), Code of Alabama 1975, although the instant crime was not prosecuted under the Alabama Criminal Code. For like treatment, see, e.g., Nelson v. State, 511 So.2d 225 (Ala.Cr.App.1986), aff'd, 511 So.2d 248 (Ala.1987); Baldwin v. State, 456 So.2d 117 (Ala.Cr.App.1983), aff'd, 456 So.2d 129 (Ala.1984), aff'd, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985).
The first determination is “whether any error adversely affecting the rights of the defendant was made in the sentence proceeding.” Upon our review of the sentence proceedings, we have found no prejudicial error. In addressing this question, we note that the trial court specifically commented on our directive, in Issue V-B, fn. 5, to give no deference to the jury’s “sentence” when it reconsidered Daniels’s sentence on remand. The court stated the following:
“This Court is aware, and always has been aware, that the language fixing the punishment at death which was mandato-rily included in the jury’s guilt stage verdict is utterly meaningless insofar as determining what the sentence should be. That language merely reflects that the jury convicted the defendant of the capital offense, nothing more. Accordingly, this Court has given that jury verdict form language, which the appellate court labelled a “sentence,” no deference or weight whatsoever. For sentencing purposes, that language has been treated as though it did not exist.”
Our second determination is “whether the trial court’s findings concerning the aggravating and mitigating circumstances were supported by the evidence.” The evidence clearly supports the court’s finding of two aggravating circumstances: (1) the fact that Daniels murdered in the first degree two or more human beings who were intentionally killed by him by one or a series of acts, and (2) this particular capital offense was especially heinous, atrocious, or cruel, § 13-11-6(8). In regard to the finding of this latter circumstance, we adopt our supreme court's comment on the trial court’s finding of this same circumstance in sentencing Daniels’s accomplice, Tomlin: “We are not inclined to rule as a matter of law that the murders were not especially heinous, atrocious or cruel.” 443 So.2d at 63. The trial court found one statutory mitigating circumstance to be present: Daniels had no significant history of prior criminal activity, § 13-11-7(1). The trial court’s finding that none of the other enumerated mitigating circumstances was present is clearly founded upon the record before us. The trial court also found the presence of several non-statutory mitigating circumstances, as reflected by its sentencing order.
Our third determination is “whether death was the proper sentence in the case.” In deciding that Daniels’s sentence is indeed appropriate, we have addressed the three questions set out in § 13A-5-53(b), as follows: (1) The record reflects not even supposition that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) from our independent weighing of the aggravating and mitigating circumstances, we are convinced that the death sentence is *661 proper punishment for Daniels’s crime; and (3) Daniels’s sentence of death is not excessive or disproportionate to the penalty imposed in similar cases.
In conclusion, we have followed the standard of review set out in A.R.A.P. 45A, and have found no plain error or defect which has or probably has adversely affected a substantial right of Daniels in any of the proceedings. Furthermore, we have considered the issues submitted by Daniels upon our review of his resentencing and find them to be without merit, for the statutory scheme for determination of punishment in a capital case provides clear guidance of the sentencer’s discretion and, thus, eliminates arbitrariness and capriciousness. See Owens v. State, 506 So.2d 383 (Ala.Cr.App.1986), remanded on other ground, 531 So.2d 21 (Ala.1987). It is our opinion that Daniels received a fair trial and a proper sentence. Accordingly, Daniels’s conviction and sentence of death are affirmed.
AFFIRMED.
All Judges concur.
APPENDIX A
STATE OF ALABAMA
vs.
JOHN RONALD DANIELS
Case No. CC 78-622
IN THE CIRCUIT COURT OF MOBILE COUNTY
SENTENCE FINDINGS AND ORDER ON REMAND
In an opinion dated November 26, 1985, the Court of Criminal Appeals remanded this case to this Court for correction of sentence findings and order in this case and for reconsideration of the sentence after such correction. John Ronald Daniels v. State, No. 1 Div. 92. This order contains the mandated corrections and reflects the resentencing based on the corrected findings. The corrected findings are drawn from the evidence at trial, the evidence presented at sentence hearing, this Court s recent review of the transcript of the trial and sentence hearing, and the November 26, 1985 opinion of the Court of Criminal Appeals.
GENERAL FINDINGS OF FACT
In November of 1975, the brother of Phillip Wayne Tomlin died as the result of an accidental shotgun discharge. Ricky Bruñe was involved in the accident. To get revenge for the accidental death of his brother, Tomlin decided to kill Ricky Bruñe. Tomlin enlisted the aid of John Ronald Daniels in his plan to kill Ricky Bruñe.
Between 4:15 p.m. and 5:15 p.m. on January 2,1977, Ricky Bruñe and Cheryl Moore were killed by Daniels and Tomlin at or near the west approach ramp at the Theodore-Dawes exit of Interstate 10 in Mobile County. Both Bruñe and Moore died from multiple gunshot wounds. Bruñe was shot four times with .38 caliber bullets. Moore was shot once with a .38 caliber bullet, and she also had a post-mortem shotgun wound to her back. Ricky Brune’s body was found inside his automobile, leaning against the door on the driver’s side. Cheryl Moore’s body was lying beside that automobile. The .38 caliber bullets were fired from the back seat of that automobile. The shotgun blast could have been fired from the back seat .or from outside the car and above Moore’s body as it lay on the ground.
At the time they were killed, Ricky Bruñe was nineteen years old, and Cheryl Moore was fifteen years old. Bruñe was killed to avenge the accidental death of Tomlin’s brother. Moore was killed because she had the misfortune to be with Ricky Bruñe when Tomlin and Daniels caught up with him. Bruñe and Moore were killed by one act or a series of related acts within the meaning of Code of Alabama 1975, § 13-ll-2(a)(10).
The killings were unlawful, intentional, wilfull, malicious, premeditated and deliberate on the part of both Daniels and Tomlin. Daniels was a full participant in the actual *662 killings, and he either personally killed the victims or intentionally aided and abetted Tomlin in killing the victims. Either way, Daniels acted with a particularized intent to kill. Daniels is guilty of the Code of Alabama 1975, § 13-ll-2(a)(10) capital offense for which he has been convicted, and his guilt was proven beyond a reasonable doubt at the trial.
The detailed recounting of the evidence contained in the Court of Criminal Appeals’ November 26, 1985 opinion is accurate, and it is hereby adopted and incorporated into this order by reference.
THE AGGRAVATING CIRCUMSTANCES
This Court finds as an aggravating circumstance the fact that Daniels murdered in the first degree two or more human beings who were intentionally killed by him by one or a series of acts. This aggravating circumstance, which mirrors the capital offense itself, is based on the court's own independent finding that the State proved as much beyond a reasonable doubt.
Daniels was not under sentence of imprisonment at the time of the capital offense, therefore, the § 13-11-6(1) aggravating circumstance is not present.
Daniels had not been previously convicted of another capital felony or a felony involving the use or threat of violence to the person, therefore, the § 13-11-6(2) aggravating circumstance is not present.
Daniels did not create a great risk of death to many persons, therefore, the § 13-11-6(3) aggravating circumstance is not present.
The capital offense was not committed while Daniels was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, rape, robbery, burglary or kidnapping for ransom, therefore, the § 13-11-6(4) aggravating circumstance is not present.
The capital offense was not committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody, therefore, the § 13-11-6(5) aggravating circumstance is not present.
Although evidence which was admissible in Tomlin’s trial established that Daniels was acting as a “hit man” or contract killer for Tomlin, that evidence was not admissible in this case against Daniels. Therefore, this Court cannot and does not consider that evidence. Under the evidence in this case, and as far as the sentencing of Daniels is concerned, the capital offense was not committed for pecuniary gain, so the § 13-11-6(6) aggravating circumstance is not present.
The capital offense was not committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws, therefore, the § 13-11-6(7) aggravating circumstance is not present.
From the number and nature of the wounds inflicted on the two young victims, this Court finds beyond a reasonable doubt that one or both victims suffered pre-mor-tem pain and suffering and mutilation sufficient to establish that this particular capital offense was especially heinous, atrocious, or cruel compared to capital offenses in general. An additional basis for this finding is the circumstances and nature of the killings. This was no sudden killing like a murder during a robbery by an addict desperate for money to buy drugs. It was not like the killing of an occupant of a home who awakens during a burglary and startles the burglar. Instead, this capital offense was the object of a long-planned, carefully thought out scheme the sole purpose of which was cold-blooded murder. The one and only reason Daniels and Tomlin traveled to Alabama was murder. While the murderous motive of their joint scheme and enterprise originated with Tomlin, Daniels was a full-fledged participant in the crime. Indeed, if there is any difference in moral culpability between the two partners in homicide, it is that Daniels’ participation was even more cold-blooded than Tomlin’s. After all, it was not Daniels whose brother had been accidentally killed by Ricky Bruñe. The § 13-11-6(8) aggravating circumstance is present.
*663 Both aggravating circumstances that have been found, which are discussed above, are found beyond a reasonable doubt. Those two aggravating circumstances are the only circumstances in aggravation considered against Daniels. More specifically, the derogatory information contained in the various presentence report materials has not been considered.
MITIGATING CIRCUMSTANCES
Daniels has no significant history of pri- or criminal activity, therefore, the § 13-11-7(1) mitigating circumstance is present.
The capital offense was not committed while Daniels was under the influence of extreme mental or emotional disturbance, therefore, the § 13-11-7(2) mitigating circumstance is not present.
Neither of the victims in this case was a participant in Daniels’ conduct or consented to the act, therefore, the § 13-11-7(3) mitigating circumstance is not present.
Daniels was not an accomplice in the capital offense and his participation in the offense was not relatively minor, therefore, the § 13-11-7(4) mitigating circumstance is not present.
Daniels did not act under extreme duress or under the substantial domination of another person, therefore the § 13-11-7(5) mitigating circumstance is not present.
Daniels’ capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not substantially impaired, therefore, the § 13-11-7(6) mitigating circumstance is not present.
At the time of the capital offense Daniels was thirty-one years old, and the § 13-11-7(7) mitigating circumstance is not present.
In addition to the § 13-11-7(1) statutory mitigating circumstance found, above, this Court also finds that certain non-statutory mitigating circumstances are present in this case. The court finds that before the time of the capital offense Daniels had a history of gainful employment; he was married and had a child, a young daughter, to whom he was devoted; Daniels’ relationship with his mother reflects favorably upon him since it is apparent to the court that she was devoted to him; and Daniels was also close to his step-sister. He was functioning well as a husband and father at the time of the capital offense. In finding mitigating circumstances this Court also considers the fact that had his financial resources permitted, Daniels could have brought to the sentence hearing people who had known him for a considerable period of time, some of whom had worked with him, who would have testified favorably about his good work habits, and who would have testified that those who knew and worked with Daniels thought he had a good general reputation, and thought he was a good person. In fairness to Daniels, the court considers what those witnesses would have testified to the same as if they had so testified.
In finding the mitigating circumstances that are present in this case, the court has been aware of the unsettled nature of the law, reflected in recent Alabama appellate court opinions, concerning the burden of proving or disproving the factual existence of such circumstances. As a precautionary matter, the court has borrowed the standard set out in 1981 statute, § 13A-5-45(g), and where any evidence at all of the existence of a mitigating circumstance existed, that circumstance has been found unless a preponderance of the evidence established that it did not exist.
WEIGHING OF AGGRAVATING AND MITIGATING CIRCUMSTANCE
The court is aware that the sentence to be imposed in this case is to be based on a weighing of the statutory aggravating circumstances against the statutory and non-statutory mitigating circumstances. The Court of Criminal Appeals has instructed this Court not to give “deference” to the so-called jury “sentence.” This Court is aware, and always has been aware, that the language fixing the punishment at death which was mandatorily included in the jury’s guilt stage verdict is utterly meaningless insofar as determining what *664 the sentence should be. That language merely reflects that the jury convicted the defendant of the capital offense, nothing more. Accordingly, this Court has given that jury verdict from language, which the appellate court labelled a “sentence,” no deference or weight whatsoever. For sentencing purposes, that language has been treated as though it did not exist. The sentence decision has been based solely upon the weighing of aggravating circumstances against mitigating circumstances.
The two aggravating circumstances, described previously, when considered together clearly outweigh the statutory and non-statutory mitigating circumstances. Moreover, the nature of those two aggravating circumstances is such that even considered separately each one individually clearly outweighs the total statutory and non-statutory mitigating circumstances. Therefore, the sentence this Court deems appropriate is not dependent upon either of the two aggravating circumstances in particular, each one being sufficient in and of itself to outweigh the mitigating circumstances.
The aggravating circumstances, whether considered separately or together, clearly outweighing the mitigating circumstances, it is the judgment of this Court that the sentence imposed upon Daniels is and should be death by electrocution. It is hereby ORDERED, ADJUDGED, and DECREED, that the defendant, John Ronald Daniels, is sentenced to be executed by electrocution at the time, at the place, and in the manner to be specified hereafter by the Alabama Supreme Court pursuant to Alabama Rule of Appellate Procedure 8(d)(1).
June 11, 1987
/s/ Ferrill D. McCrae
Ferrill D. McRae
Presiding Circuit Judge
Thirteenth Judicial Circuit