[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 382 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 383 
On June 26, 1982, James Harvey Callahan was convicted for intentionally murdering Rebecca Suzanne Howell during the course of a first-degree kidnapping, a capital offense under § 13A-5-40(a)(1), Ala. Code 1975. On July 8, 1982, after the jury recommended that Callahan be sentenced to death by a 10-2 vote, the trial court sentenced Callahan to death. This court affirmed Callahan's conviction and sentence. Callahan v. State,471 So.2d 447 (Ala.Cr.App. 1983). The Alabama Supreme Court reversed the conviction and remanded the cause for a new trial. Ex parteCallahan, 471 So.2d 463 (Ala. 1985), cert. denied, 474 U.S. 1019
(1985). On November 7, 1987, Callahan was again convicted of capital murder, and the jury returned an unanimous recommendation for the death penalty. On November 25, 1987, the trial court sentenced Callahan to death. This court affirmed Callahan's second conviction and sentence. Callahan v. State,557 So.2d 1292 (Ala.Cr.App. 1989). The Alabama Supreme Court affirmed the conviction and death sentence on November 17, 1989. Ex parteCallahan, 557 So.2d 1311 (Ala. 1989). The United States Supreme Court denied Callahan's petition for certiorari review on October 1, 1990. Callahan v. Alabama, 498 U.S. 881 (1990).
On September 30, 1992, Callahan, through counsel, filed a Rule 32, Ala.R.Crim.P., petition for post-conviction relief, which he amended on March 14, 1996, and again amended on July 2, 1996. On July 1-2, 1996, the trial court conducted an evidentiary hearing on the claims of relief sought by Callahan. Judge Samuel H. Monk, the circuit judge who presided over Callahan's first and second trials, also presided over the evidentiary hearing on the Rule 32 petition. On February 17, 1998, the trial court entered an order denying Callahan's Rule 32 petition. Callahan now appeals the trial court's decision. We affirm.
The State's evidence at the 1987 trial tended to prove that Rebecca Suzanne Howell, a 26-year-old college student at Jacksonville State University, was abducted from the Norge Village Washeteria in Calhoun County, some time between 12:30 a.m. and 1:30 a.m. on the morning of February 4, 1982. Her body was found about two weeks later floating in Tallaseehatchee Creek near Broughton Bridge, where it had become entangled in some brush. An autopsy revealed that Ms. Howell had been killed by asphyxiation, consistent with smothering. Her hands had been bound with strips of white plastic duct tape, and she had apparently been raped. She was wearing blue jeans but no underpants, shoes, or socks. Callahan's truck was seen at another nearby washeteria shortly before Ms. Howell was abducted; the individual driving the truck was seen watching, approaching, and then following another lone female. A truck generally matching the description of Callahan's truck was also seen at the Norge Village Washeteria at or near the time of Ms. Howell's abduction.[1] *Page 384 
Initially, we note that on direct appeal all issues were scrutinized, including those issues reviewable only under the "plain error" doctrine. Rule 45A, Ala.R.App.P. There is no plain error review in an appeal from the denial of a Rule 32 petition.Thompson v. State, 615 So.2d 129, 130-31 (Ala.Cr.App.), cert. denied, 615 So.2d 129 (Ala.), cert. denied, 510 U.S. 976 (1993).
 I.
Callahan presents numerous claims regarding the performance of his trial counsel and appellate counsel. He contends that, as a result of the errors committed by both his trial counsel and appellate counsel, he was denied the effective assistance of counsel guaranteed by the Sixth Amendment of the United States Constitution.
 "In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
 "`First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.'
"466 U.S. at 687, 104 S.Ct. at 2064.
 "`The performance component outlined in Strickland is an objective one: that is, whether counsel's assistance, judge under "prevailing professional norms," was "reasonable considering all the circumstances.'" Daniels v. State, 650 So.2d 544, 552 (Ala.Cr.App. 1994), cert. denied, 488 U.S. 1051, 109 S.Ct. 884, 102 L.Ed.2d 1007 (1995), quoting Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. `A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.
 "The claimant alleging ineffective assistance of counsel has the burden of showing that counsel's assistance was ineffective. Ex parte Baldwin, 456 So.2d 129 (Ala. 1984), aff'd, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). `Once a petitioner has identified the specific acts or omissions that he alleges were not the result of reasonable professional judgment on counsel's part, the court must determine whether those acts or omissions fall "outside the wide range of professionally competent assistance." [Strickland,] 466 U.S. at 690, 104 S.Ct. at 2066.' Daniels, 650 So.2d at 552. When reviewing a claim of ineffective assistance of counsel, this court indulges a strong presumption that counsel's conduct was appropriate and reasonable. Hallford v. State, 629 So.2d 6 (Ala.Cr.App. 1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994); Luke v. State, 484 So.2d 531
(Ala.Cr.App. 1985). `This court must avoid using "hindsight" to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance.' Hallford, 629 So.2d at 9. See also, e.g., Cartwright v. State, 645 So.2d 326 (Ala.Cr.App. 1994).
 "`Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant *Page 385 
to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'
 "Strickland, 466 U.S. at 689, 104 S.Ct. at 2065, (citations omitted). See Ex parte Lawley, 512 So.2d 1370, 1372 (Ala. 1987).
 "`Even if an attorney's performance is determined to be deficient, the petitioner is not entitled to relief unless he establishes that "There is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Strickland,] 466 U.S. at 694, 104 S.Ct. at 2068.'
"Daniels, 650 So.2d at 552.
 "`When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'
 "Strickland, 466 U.S. at 697, 104 S.Ct. at 2069, quoted in Thompson v. State, 615 So.2d 129, 132 (Ala.Cr.App. 1992), cert. denied, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 418
(1993).
 "In a Rule 32 proceeding, the petitioner has `the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.' Rule 32.3, Ala.R.Crim.P. See Fortenberry v. State, 659 So.2d 194 (Ala.Cr.App. 1994), cert. denied, [516 U.S. 846], 116 S.Ct. 137, 133 L.Ed.2d 84 (1995); Wilson v. State, 644 So.2d 1326 (Ala.Cr.App. 1994); Elliott v. State, 601 So.2d 1118
(Ala.Cr.App. 1992)."
Bui v. State, 717 So.2d 6, 12-13 (Ala.Cr.App. 1997).
Moreover, "`[a] finding of no plain error is one factor to consider when assessing the performance of . . . counsel.'"Fortenberry v. State, 659 So.2d 194, 200 (Ala.Cr.App. 1994), quoting Hallford v. State, 629 So.2d 6, 10 (Ala.Cr.App. 1992).
Callahan initially raises the following issues regarding ineffective assistance of trial counsel during the guilt phase of his trial.
 A.
Callahan alleges that he was denied effective assistance of counsel because, he argues, trial counsel failed to raise legal claims that would have prevented his statements from being admitted at his second trial.
A review of the history of this case reveals that Callahan made five statements to police investigators before his first trial. At his first trial, only the fifth statement was offered into evidence. On direct appeal from the first conviction, the Alabama Supreme Court reversed the conviction, holding that the State did not meet its *Page 386 
burden of showing the proper predicates for the admission of the fifth statement because it had failed to show that that properly taken statement had not been tainted by an earlier, improperly taken statement. The Alabama Supreme Court did not address whether Callahan's four previous statements were illegally obtained, but merely pointed out that, because the State did not present evidence concerning the taking of those statements, the State did not prove that the taking of those statements had not tainted the taking of the fifth statement.
At Callahan's second trial, all five statements were offered and admitted into evidence. Both this court and the Alabama Supreme Court held that the five statements were properly admitted into evidence. Callahan v. State, 557 So.2d at 1299-1303; Exparte Callahan, 557 So.2d at 1311.
Callahan now argues that trial counsel was ineffective for not arguing that the Double Jeopardy Clause prevented the State from seeking to admit the statements that had not been offered at the first trial. In his order denying the Rule 32 petition, the trial court made the following findings concerning this issue:
 "Callahan relies on Hull v. State, 607 So.2d 369
(Ala.Cr.App. 1992), and Ex parte Hergott, 588 So.2d 911
(Ala. 1991), for the proposition that the Double Jeopardy Clause prevented the State from seeking the admissibility of statements that were not offered at the first trial. Callahan's reliance on Hull and Hergott is misplaced. In explaining Hull and Hergott, the Court of Criminal Appeals recently stated `[t]hose cases held that, where improperly admitted evidence resulted in the State's having failed to prove its case because of insufficient evidence, the State may not thereafter admit additional sufficient evidence in an attempt to properly prove the requisite elements of the offense.' Arthur v. State, [711 So.2d 1031 (Ala.Cr.App. 1996), aff'd, 711 So.2d 1097 (Ala. 1998]. In Hull, and Hergott, the Court implicitly found that the State failed to prove its case against the defendant. In the present case, there has never been a finding that the State failed to prove its case because of insufficient evidence at the first trial. for that reason, the holdings of Hull and Hergott are not applicable to this case.
". . . .
 "In the present case, the Alabama Supreme Court, on appeal from the first trial, granted Callahan a new trial. It held that the State, in attempting to introduce Callahan's fifth (i.e., chronological) statement, had not proven that the Miranda warnings were given before a statement taken the day before. Callahan, 471 So.2d at 464. At the second trial, the prosecutor offered all of Callahan's statements and laid the proper Miranda predicate for all of the statements. See Callahan, 557 So.2d at 1295-99. The prosecutor's offer of all five statements at the second trial and proving the Miranda warnings were given before each statement was taken does not violate the Double Jeopardy Clause. Trial counsel not raising a double jeopardy argument to prevent the admissibility of the statements was not outside `the wide range of reasonable professional assistance.' Strickland v. Washington, 466 U.S. at 689."
(C.R. 571-72.)
The trial court was correct. Callahan's premise that the five statements entered into evidence at the second trial could have been barred based double jeopardy or collateral estoppel had trial counsel made timely objections is faulty. Callahan's reliance on the language of Hull and Hergott, while facially attractive, cannot withstand close review. The foundation of Callahan's argument is that the Alabama Supreme Court's opinion in the first appeal was a final judgment on the issue of the admissibility of the statements. However, the Court's disposition of the first appeal was actually based only on what was contained *Page 387 
in the record and was undertaken without any knowledge or speculation about what other evidence the State would offer in the event of a retrial. See Lindley v. State, [Ms. 1961992, September 11, 1998] 728 So.2d 1153 (Ala. 1998). In Leitner v.State, 672 So.2d 1371 (Ala.Cr.App. 1995), this court noted that the United States Supreme Court had differentiated between reversals based on evidentiary insufficiency and those based on the incorrect receipt or rejection of evidence:
 "`Burks [v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)], was careful to point out that a reversal based solely on evidentiary insufficiency has fundamental different implications, for double jeopardy purposes, than a reversal based on such ordinary "trial errors" as the "incorrect receipt or rejection of evidence." 437 U.S. at 14-16, 98 S.Ct. at 2148-2150. While the former is in effect a finding "that the government has failed to prove its case" against the defendant, the latter "implies nothing with respect to the guilt or innocence of the defendant," but is simply "a determination that [he] has been convicted through a judicial process
which is defective in some fundamental respect." Id. at 15, 98 S.Ct. at 2149 (emphasis added.'
 "Lockhart v. Nelson, 488 U.S. [33, 40, 109 S.Ct. 285, 290, 102 L.Ed.2d 265 (1988)]."
672 So.2d at 1375. The Alabama Supreme Court's reversal of Callahan's conviction at his first trial was based on trial error, not on evidentiary insufficiency; therefore, Callahan's retrial did not implicate the Double Jeopardy Clause or the doctrine of collateral estoppel. Id.
The same analysis holds true for Callahan's argument that an objection based on the "law-of-the-case doctrine" would have resulted in the statements' not being admitted.
 "Under the `law of the case' doctrine, `a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.' Thomas v. Bible, 983 F.2d 152, 154 (9th cir) (cert. denied, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 661
(1993)). The doctrine is not a limitation on a tribunal's power, but rather a guide to discretion. Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). A court may have discretion to depart from the law of the case where . . . the evidence on remand is substantially different. . . ."
United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997).
As discussed above, the decision of the Alabama Supreme Court in Callahan's first trial was not a dispositive ruling on the sufficiency of the evidence concerning Callahan's statements, but was merely a ruling on the trial court's incorrect receipt of evidence. The Supreme Court's ruiling was based on the record before it. There is nothing in the law-of-the-case doctrine which would have prohibited the State from producing more or different evidence in seeking the admission of the five statements at a retrial. See Naples v. United States, 359 F.2d 276, 277-78
(D.C. Cir. 1966); People v. Mattson, 50 Cal.3d 826, 852-53, 268 Cal.Rptr. 802,820, 789 P.2d 983, 1001, cert. denied, 498 U.S. 1017 (1990). The trial court properly rejected this argument.
The trial court's rejection of this argument was also proper based on the doctrine of res judicata. While Callahan made reference to this doctrine in his petition to the trial court and to this court on appeal, he did not advance a specific argument on how it applied to this case. Rule 32.3, Ala.R.Crim.P. Callahan did not meet his burden of proof in establishing that trial counsel was ineffective for failing to challenge the admission into evidence of his five statements made to police. *Page 388 
 B.
Callahan argues that his trial counsel was ineffective for failing to research the question whether his warrantless arrest was based on probable cause, and for failing to argue that it was not. This failure, he says, violated his Fourth Amendment rights. This court, in exercising its responsibilities under Rule 45A, Ala.R.App.P. and conducting a plain-error review of the record, has already determined that Callahan's arrest was based on probable cause. Callahan v. State, 557 So.2d at 1300-1303. Therefore, the trial court correctly held that Callahan failed to demonstrate that counsel's performance was deficient or that he was prejudiced with regard to this claim. Counsel cannot be said to be ineffective for not raising a claim this court has already found to be without merit. See Patrick v. State, 680 So.2d 959,963 (Ala.Cr.App. 1996); Hope v. State, 521 So.2d 1383, 1386
(Ala.Cr.App. 1988).
 C.
Callahan argues that trial counsel was ineffective for failing to adequately challenge the admissibility of his statements by: failing to adequately cross-examine state witnesses at the suppression hearing; failing to adequately prepare Callahan to testify at the suppression hearing; failing to investigate and subpoena witnesses; and failing to adequately research, prepare, and argue constitutional standards regarding the inadmissibility of the statements. The trial court responded to these arguments:
 "Callahan claims that trial counsel failed to adequately cross-examine State witnesses who testified at the suppression hearing. Callahan does not reference which State witnesses were not properly cross-examined or how the questioning by trial counsel was inadequate. As a part of the Rule 32 proceedings, Callahan did not call any of the State witnesses who testified at the suppression hearing. Callahan has not met his burden of proof to entitle him to relief. Rule 32.3, A.R.Crim.P.
 "Callahan claims that trial counsel did not prepare him to testify at the suppression hearing. Callahan does not state how trial counsel's preparation was inadequate. As a part of the Rule 32 proceedings, Callahan did not present any testimony to support this allegation. Callahan has not met his burden of proof to entitle him to relief. Rule 32.3, A.R.Crim.P.
 "Callahan claims that trial counsel failed to investigate and subpoena witnesses, `including people who had actually witnessed parts of the interrogation and who would have testified about facts that would have shown that Mr. Callahan's statements were involuntary and that police used improper means to obtain statements from him.' See Callahan's Post-Hearing Brief at 11-12. Callahan does not state what witnesses should have been investigated or subpoenaed. As a part of the Rule 32 proceedings, Callahan did not call any witnesses to support these allegations. Callahan has not met his burden of proof to entitle him to relief. Rule 32.3, A.R.Crim.P.
 "Callahan claims that trial counsel failed to argue constitutional standards in an effort to establish the inadmissibility of the allegedly involuntary statements. There is nothing in the record to show that any of his statements were involuntary. Before each of the four formal statements, Callahan was advised of his Miranda rights and he executed a written waiver of those rights on all four occasions. Callahan, 557 So.2d at 1296-98. Although Callahan was interrogated four times over a two-day period, there is nothing in the record to indicate that any single session was exhaustively lengthy. There is no evidence that the police used any physical force against Callahan or that they threatened or harassed him in any way. Callahan has not presented any evidence which suggests *Page 389 
that he was unable to comprehend the Miranda warnings or the consequences of his waiver of those rights. Therefore, Callahan's allegations that trial counsel failed to argue `constitutional standards regarding the admissibility of the involuntary statements' is without merit."
(C.R. 574-75.) We adopt the trial court's findings as our own. This court has already determined that Callahan's statements were voluntary and were properly admitted into evidence. Callahan v.State, 557 So.2d at 1299-1303. Callahan's bare allegations of ineffectiveness failed to prove by a preponderance of the evidence any facts necessary to entitle him to relief. Rule 32.3, Ala.R.Crim.P.; Craig v. State, 645 So.2d 349, 352 (Ala.Cr.App. 1994).
 D.
Callahan argues that trial counsel was ineffective for conducting what he says was a "substandard" voir dire examination. Specifically, Callahan argues that it is ineffective assistance of counsel for trial counsel not to ask veniremembers questions about the death penalty. Callahan presented no evidence to substantiate his argument that, but for trial counsel's failure to ask such question during the voir dire examination, he would not have been convicted of capital murder and sentenced to death.
The trial court correctly rejected Callahan's claim, holding that trial counsel's voir dire was "not outside the wide range of reasonable professional assistance." The following observations are also applicable here:
 "[T]he appellant has not shown any evidence of bias, that he was prejudiced by trial counsel's allegedly insufficient voir dire examination of potential jurors, and that there is a reasonable probability that the result of the trial would have been different if counsel had conducted additional voir dire. Strickland, supra. Again, he has made bare allegations and drawn legal conclusions that are not supported by facts. Rule 32.6(b), Ala.R.Crim.P. Therefore, he has not satisfied his burden of proof under Strickland."
Davis v. State, 720 So.2d 1006, 1018 (Ala.Cr.App.), cert. denied,720 So.2d 1006 (Ala. 1998), cert. denied, 525 U.S. 1149,119 S.Ct. 1049 (1999).
 E.
Callahan next argues that trial counsel's failure to challenge, pursuant to Batson v. Kentucky, 476 U.S. 79 (1986), the prosecution's use of peremptory challenges against black veniremembers, constituted per se ineffective assistance of counsel. In its order denying relief as to this allegation of ineffective assistance of counsel, the trial court wrote:
 "Callahan's second trial concluded over a year after the Batson case was decided. At the time of Callahan's 1987 trial, a defendant could establish a prima facie case of `purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial.' Batson, 476 U.S. at 96. However, to establish such a case, `the defendant first must show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.' Id. Since Callahan is a white person and thus not a member of a cognizable racial group, trial counsel's performance was not deficient for failing to raise a Batson challenge.
 "On October 1, 1990, the United States Supreme Court denied certiorari in this case, Callahan v. Alabama, 498 U.S. 881 (1990), thus making Callahan's conviction final for purposes of retroactivity. Griffith v. Kentucky, 479 U.S. 314
(1987). On April 1, 1991, six months after Callahan's *Page 390 
conviction became final, the United States Supreme Court decided the case of Powers v. Ohio, which held that under the Equal Protection Clause, a criminal defendant may object to race-based exclusion of jurors through peremptory challenges whether or not the defendant and the excluded jurors share the same race. Powers v. Ohio, 499 U.S. 400, 404-17 (1991). The holding of Powers extended the applicability of Batson to white defendants, and was a change in the law. Farrell v. Davis, 3 F.3d 370, 371-72 (11th Cir. 1993). Alabama courts on many occasions have refused to hold trial counsel's performance ineffective for failing to forecast changes in the law. State v. Tarver, 629 So.2d 14, 17-18 (Ala.Cr.App. 1993); Duren v. State, 590 So.2d 360, 364-65 (Ala.Cr.App. 1990), aff'd, 590 So.2d 369 (Ala. 1991), cert. denied, 112 S.Ct. 1594 (1992); Morrison v. State, 551 So.2d 435
(Ala.Cr.App. 1989), cert. denied, (Ala. 1989), cert. denied, 495 U.S. 911 (1990). Trial counsel cannot be expected to have raised a Powers challenge at a trial conducted almost four years before Powers was decided.
 "Trial counsel's failure to object to the district attorney's use of peremptory challenges was not outside `the wide range of reasonable professional assistance.' Strickland v. Washington, 466 U.S. at 689. In addition, there is no reasonable probability that, if trial counsel had filed such a motion, the result of the trial would have been different."
(C.R. 576-78.) The trial court's findings on this issue to are correct and we adopt this portion of the trial court's order as our own. Given the circumstances of this case, trial counsel was not ineffective for not making a Batson motion to challenge the peremptory strikes of the prosecution, when such a motion, in 1987, would have been without merit.
In a related issue, Callahan also argues that trial counsel was ineffective for failing to object to the alleged underrepresentation of black people and women in the pool from which his jury was selected. We concur with the findings of the trial court that, because Callahan made no effort to call any witnesses or present any evidence regarding the alleged representation of black people and women on Calhoun County jury venires in the 1980's, he failed to prove by a preponderance of the evidence any facts necessary to entitle him to relief. Rule 32.3, Ala.R.Crim.P.; Craig v. State, 645 So.2d 349, 352
(Ala.Cr.App. 1994).
 F.
Callahan makes the following argument: "Trial counsel failed to adequately object to jurors being excused for cause." Callahan offers no factual basis for such a broad allegation of error. This bare allegation that a constitutional right has been violated and Callahan's mere conclusion that, "but for trial counsel's failure to object to jurors improperly being excused for cause and to jurors improperly serving on the jury, Mr. Callahan would not have been convicted of capital murder and sentenced to death," is insufficient to warrant any further proceedings. Rule 32.6, Ala.R.Crim.P.
Callahan also argues that trial counsel was ineffective for not objecting to a juror who was "severely distressed at being sequestered." From Callahan's citation to the record, it is clear that he was referring to Mrs. M., a juror who, the trial court noted, made a visible reaction to the announcement that the jury was going to be sequestered. When the trial court questioned Mrs. M. about her reaction, she responded that, while she had not informed the court that she would have any problems with being sequestered, she was concerned about arranging for child care for her baby when her husband had to go to work. The trial court then arranged for the juror to make telephone calls in order to help make child-care arrangements. *Page 391 
(R. 225-26.) After this episode, the juror made no additional statements about child-care problems. No evidence was presented at the Rule 32 hearing that Mrs. M. was distracted from her duties as a juror or that she was biased against Callahan because of her child-care concerns.
We agree with the trial court's findings that Callahan did not meet his burden by a preponderance of the evidence that trial counsel's failure to object to Mrs. M. being a juror was so prejudicial that it entitled him to relief. Rule 32.3, Ala.R.Crim.P.; Strickland v. Washington, supra.
 G.
Callahan argues that trial counsel was constitutionally ineffective when he failed to object to the following excerpts of the prosecutor's statements during the closing arguments at trial:
 1. "There will be several things you won't hear me mention because by operation of law I'm not allowed to argue. You won't hear me say much about the victim's family because I can't do that. I can't quote from scriptures and things of that nature." (R. 888.)
 2. "I don't know how Gladys impressed you. She impressed me. And I thought she was mad about what they had tried to do to her. I think she told the truth when she said that she didn't know any of these people and never met Murray Knight before in her life. I think Murray's told the truth. And I think you know that." (R. 889.)[2]
 3. "I would rather you bring back no verdict at all if you can't do what needs to be done in this case." (R. 906.)
 4. "[W]hen you bring down a verdict in this case, it's a mirror of what kind of person you are. What you believe in. What kind of intestinal fortitude do you have? It's been five and a half years. I think the State of Alabama has got a right to expect you to do what has to be done." (R. 915-16.)
 5. "The main issue is whether or not this Defendant kidnapped this girl, took her to his trailer, and raped her, and killed her. But what's important is it's part of the Defendant's original plan, from the statements you have heard, to assassinate the character of the girl that he has killed. So, you see, when you come back from upstairs with your verdict, whatever it may be, you will not just be telling us whether or not you think this Defendant is guilty. You'll be telling us whether or not you think Rebecca Howell was out behind the Jacksonville football stadium late in 1981 . . ." (R. 889-90.) And also, "I would do anything I could to save his neck myself, I suppose, if I represented him. But the assault on Becky Howell is really two-fold: physically and on her character." (R. 912.)
 6. "That's the final indignity of a situation like that — or like this — is when they cut you up like a piece of meat to try and find some evidence as to who killed you." (R. 913.)
In addition to those arguments, Callahan also argues that trial counsel was constitutionally ineffective when he failed to object to the following comment by the prosecutor during voir dire:
 "The term `equal protection under the law,' as it applies to all of us; everybody understand that that legal phraseology or term that is applied to this defendant also applied to the victims of crimes and to everyone of you? We're all entitled to equal protection under the law. Does everybody understand that? Not only this defendant." (Supp.R. 15-16.)
Lastly, Callahan argues that trial counsel was constitutionally ineffective for not arguing that the cumulative effect of the prosecutor's misconduct rendered his trial unreliable. *Page 392 
The United States Court of Appeals for the Eleventh Circuit has held that the test to determine whether argument by a prosecutor was prejudicial is "whether there is a reasonable probability that, but for the arguments, the death verdict would not have been given." Brooks v. Kemp, 762 F.2d 1383, 1413 (11th Cir. 1985). In reviewing any prejudicial impact the prosecutor's argument may have had on Callahan, we review the arguments as we did in our plain error review of the arguments in direct appeal.
 "In reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses, the task of this Court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract. Whitlow v. State, 509 So.2d 252, 256 (Ala.Cr.App. 1987); Wysinger v. State, 448 So.2d 435, 438 (Ala.Cr.App. 1983); Carpenter v. State, 404 So.2d 89, 97 (Ala.Cr.App. 1980), cert. denied, 404 So.2d 100 (Ala. 1981). Moreover, this Court has also held that statements of counsel in argument to the jury must be viewed as delivered in the heat of debate; such statements are usually valued at their true worth and are not expected to become factors in the formulation of the verdict. Orr v. State, 462 So.2d 1013, 1016 (Ala.Cr.App. 1984); Sanders v. State, 426 So.2d 497, 509 (Ala.Cr.App. 1982)."
Bankhead v. State, 585 So.2d 97, 105-07 (Ala.Cr.App. 1989).
We also note that prior to the guilt phase the trial court instructed the jury as follows:
 "Now, again, what the attorneys are going to say to you in this phase of the trial in their arguments is not evidence. And you should not consider it as evidence. You have heard the evidence and testimony in this case. But just because what they have to say is not evidence does not mean what they have to say is not important. It is important. At this point in the trial the attorneys have the right to tell you what they feel like they have shown to you. They have the right to review the evidence and testimony in doing that. They have a right to ask you to draw inferences or conclusions from the evidence. They have the right to tell you what they expect my charge to be on the law so that it will assist you in applying the facts, as you find the facts to be, [to] the law as I will charge it to you.
 "Now, again, you are the judges of the facts of this case. And I can assure you that the attorneys who will argue to you, Mr. Field, Mr. Knight, and Mr. Wilkinson, will not intentionally misstate any law to you intentionally. They each, however, view the facts of this case differently. And I'm just going to tell you this; that should anything be stated to you in closing arguments that is not consistent with the facts as you, the jury, find the facts to be, you should disregard that argument. Likewise, if any argument may be made to you that is not consistent with the law as I ultimately charge it to you, you should disregard that, also."
(R. 886-87.) In our review for prejudice, we presume, as we did in our plain error review on direct appeal, that the jury followed the instructions of the trial court. Holland v. State,588 So.2d 543, 549 (Ala.Cr.App. 1991).
Having reviewed the arguments of the prosecutor in their entirety, we do not believe trial counsel was constitutionally ineffective for failing to object to those parts of the argument of which Callahan now complains.
 "Effective counsel does not mean errorless counsel or counsel that objected every time he `probably should have.' Adams v. Wainwright, 709 F.2d 1443, 1446 (11th Cir. 1983), cert. denied, 464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203
(1984). `[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning.' Donnelly v. DeChristoforo, *Page 393 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d (1974). Here, as in Fleming v. Kemp, 748 F.2d 1435, 1450 (11th Cir. 1984), cert. denied, [475 U.S. 1058], 106 S.Ct. 1286, 89 L.Ed.2d 593
91986), `We have examined the comments in question and conclude that their propriety was debatable and that objections could have backfired on the defense. Counsel's heat-of-trial decisions not to object are understandable here. Even in hindsight, we cannot fault them.' The prosecutor's comments were not of such nature as to render the proceedings fundamentally unfair. At the very worst, they are questionable, but certainly not of constitutional magnitude. Hall v. Wainwright, 733 F.2d 766, 773 (11th Cir. 1984), cert. denied, Wainwright v. Hall, 471 U.S. 1107, 105 S.Ct. 2344, 85 L.Ed.2d 858 (1985).
Jackson v. State, 501 So.2d 542, 546-47 (Ala.Cr.App. 1986).
We also agree with the holding of the trial court that the prosecutor's comment during voir dire examination concerning equal protection, when viewed in its entirety, was not legally incorrect or a misleading statement.
Even if the prosecutor's arguments were improper, we find no reasonable probability that, had trial counsel objected to those arguments, the jury would have not convicted Callahan of capital murder or would have recommended a lesser punishment. Brooks v.Kemp, supra.
 H.
Callahan argues that trial counsel was constitutionally ineffective for failing to obtain independent experts to examine and analyze the tape-recordings of his statements, arguing that had he done so, these experts would have discovered evidence of coercion in the taking of the statement or evidence of tampering or improper recording. Callahan presented no evidence to support these claims. Callahan's bare allegations of ineffectiveness failed to prove by a preponderance of the evidence any facts necessary to entitle him to relief. Rule 32.3, Ala.R.Crim.P.;Craig v. State, 645 So.2d 349, 352 (Ala.Cr.App. 1994).
 I.
Before trial, trial counsel filed a motion for a change of venue and orally argued the motion before the trial court. Callahan argues that trial counsel was constitutionally ineffective because he "failed to adequately research, prepare, and argue Mr. Callahan's Motion for Change of Venue." In its order denying relief, the trial court wrote:
 "At the Rule 32 hearing, Callahan presented newspaper articles in an effort to support this claim. See Petitioner's Exhibit 8. The vast majority of the articles Callahan introduced into evidence were written before and during the 1982 trial. The few articles that Callahan presented regarding the 1987 trial indicate that there was little publicity before the trial. Indeed, at the pretrial conference, this court noted that the Callahan case had received very little publicity in the media. R. 49. The newspaper articles that Callahan submitted do not show that Calhoun County was saturated with publicity before the 1987 trial."
C.R. 584.) We agree with the findings of the trial court.
Callahan has failed to prove that he was entitled to a change of venue because of prejudicial pretrial publicity. He has, therefore, also failed to establish a reasonable probability that, but for the failure of trial counsel to better research, prepare, and argue the change of venue motion, the outcome of the trial would have been different. Rule 32.3, Ala.R.Crim.P.; Stricklandv. Washington, 466 U.S. at 694.
 J.
Before trial, trial counsel filed a motion asking the trial judge to recuse himself and orally argued this motion to the court. Trial counsel argued that, because the trial *Page 394 
judge assisted an attorney in gaining access to Callahan when Callahan was making his fourth statement, the trial judge was a material witness with regard to the voluntariness of his statement and therefore should have recused himself. Callahan now argues that trial counsel was constitutionally ineffective for "failing to adequately research, prepare, and argue Mr. Callahan's Motion for Recusal."
This court, on direct appeal, has already determined that the totality of the circumstances in this case did not require the trial judge to recuse himself. Callahan v. State,557 So.2d at 1307-09. Callahan presented no evidence to support his claim that, but for trial counsel's ineffectiveness, the trial judge would have recused himself and Callahan would not have been convicted of capital murder and sentence to death. Therefore, the trial court correctly held that Callahan failed to demonstrate deficient performance or prejudice with regard to this claim. Counsel cannot be said to be ineffective for not raising a claim this court has already found to be without merit. See Patrick v.State, 680 So.2d 959, 963 (Ala.Cr.App. 1996); Hope v. State,521 So.2d 1383, 1386 (Ala.Cr.App. 1988).
 K.
Before trial, trial counsel moved to quash the capital murder indictment on due process and equal protection grounds. Callahan argues that trial counsel was constitutionally ineffective because he "failed to adequately research, prepare, and argue the Motion to Quash the Indictment." In rejecting this claim for relief, the trial court wrote:
 "Callahan's present counsel has presented no evidence or pleaded any facts that show Callahan is entitled to relief on this claim. Rule 32.3, A.R.Crim.P. Additionally, there was no valid legal reason to object to the three-count indictment because each count alleged a different factual element. `A single act may be prosecuted and punished under different statutory provisions if each offense requires proof of an element that the other does not.' Robinson v. State, 484 So.2d 1197, 1199 (Ala.Cr.App. 1986)."
(C.R. 587.) We agree with the trial court's findings on this issue.[3] Callahan did not meet his burden of proving by a preponderance of the evidence the facts necessary to show that he is entitled to relief. Rule 32.3, Ala.R.Crim.P.
 L.
Callahan argues that trial counsel's actions in failing to object to Assistant District Attorney Joe Hubbard and Deputy Sheriff Max Kirby's being "excused from the rule," even though both individuals testified for the State, constituted ineffective assistance of counsel. Callahan also argues that trial counsel was constitutionally ineffective for not "adequately" objecting to the court's allowing a member of the victim's family to sit at counsel's table.
Callahan presented no factual allegations or legal arguments to support this claim. Callahan's bare allegations of ineffectiveness failed to prove by a preponderance of the evidence any facts necessary to entitle him to relief. Rule 32.3, Ala.R.Crim.P.; Craig v. State, 645 So.2d 349, 352 (Ala.Cr.App. 1994).
 M.
Callahan argues that trial counsel was constitutionally ineffective for failing to request that the prosecutor produce any exculpatory material in the State's possession. He does not allege that any exculpatory evidence that was not discovered by trial counsel actually existed, nor did he offer any evidence during the Rule 32 evidentiary hearing of exculpatory evidence the prosecutor suppressed because trial *Page 395 
counsel did not make a specific demand for it. As the trial court noted in its order denying relief, the record indicates that the State provided discovery to trial counsel, citing the following pages in the record of trial: C.R. 31-33, 35-36, 37-38, 44-45, 46, 47, 48, 50, 51, 64, 79-82.
Callahan did not meet his burden of proving by a preponderance of the evidence the facts necessary to show that he is entitled to relief. Rule 32.3, Ala.R.Crim.P.; Fortenberry v.State, 659 So.2d 194, 197 (Ala.Cr.App. 1994), cert. denied,659 So.2d 194 (Ala. 1995), cert. denied, 516 U.S. 846 (1995).
 N.
Callahan argues that trial counsel's conduct constituted ineffective assistance of counsel when he "failed to secure transcription of critical portions of the proceedings, including bench conferences and in-chambers discussions, thereby failing to properly preserve the record for review on appeal." Callahan fails to allege any specific in-chambers discussions he believes should have been transcribed and refers to only two places in the record where, he argues, bench conferences should have been recorded.
In its order denying relief on this claim, the trial court wrote:
 "At the evidentiary hearing, Callahan presented no evidence regarding what the subject of these two missing bench conferences was. Callahan called one of the trial counsel as a witness at the evidentiary hearing, but did not question him on what occurred during those conferences. Callahan has the burden to prove by a preponderance of the evidence the facts necessary to show that he is entitled to relief. Rule 32.3, A.R.Crim.P. Callahan has not met the burden of proof required by the Rules of Criminal Procedure. Additionally, there is no reasonable probability that, if these small portions of the record had been transcribed, the result of the trial would have been different. Strickland v. Washington, 466 U.S. at 694.
(C.R. 589.) The trial court was correct. Callahan's bare allegations concerning trial counsel's ineffectiveness for not securing transcriptions of nonspecified in-chambers discussions is not sufficiently pleaded to warrant further proceedings. Rule 32.6, Ala.R.Crim.P. Regarding any constitutional requirement that trial counsel secure the transcription of bench conferences, Callahan failed to present any evidence indicating that any issue on appeal was adversely decided because of an incomplete or inaccurate appellate record. Callahan, therefore, did not meet his burden of proving by a preponderance of the evidence the facts necessary to show that he is entitled to relief. Rule 32.3, Ala.R.Crim.P.; Hubbard v. State, 584 So.2d 895, 908
(Ala.Cr.App.), cert. denied, 584 So.2d 895 (Ala. 1991), cert. denied, 502 U.S. 1041 (1992).
 O.
Callahan argues that trial counsel was constitutionally ineffective for failing to obtain, or failing to ask the court for assistance to obtain, independent defense experts who would have shown his mental health disabilities and impairments relevant to his defense. Specifically, Callahan argues that psychiatric experts would have testified as to the lingering psychological impact of growing up in an abusive family. According to Callahan, these experts also could have demonstrated how he could not be guilty of capital murder because he could not have formed the specific intent to kill; they could have testified that his use of drugs and alcohol rendered him unable to comprehend what he was doing during the crime.
Callahan presented no evidence to show that any independent expert witness would testify as he has indicated so that there would be a reasonable probability of a different result in the case. Strickland v. Washington, 466 U.S. at 694. At the Rule 32 evidentiary hearing, *Page 396 
Callahan presented the testimony of a social worker and a psychologist. Neither of these witnesses was questioned concerning Callahan's drug or alcohol use on the day of the murder, and neither testified concerning Callahan's ability to form a specific intent to kill. Callahan did not meet his burden of proving by a preponderance of the evidence the facts necessary to show that he is entitled to relief. Rule 32.3, Ala.R.Crim.P.; Fortenberry v. State,659 So.2d at 197.
 P.
Callahan argues that trial counsel's conduct constituted ineffective assistance of counsel because he "failed to investigate the facts and circumstances surrounding the case, and was therefore unable to present an adequate defense at the guilt phase of . . . trial." Specifically, Callahan alleges that there were people who would have testified that Callahan was severely intoxicated as the result of ingesting drugs and alcohol on the night of the crime and that he lacked the ability to control his conduct. He alleges that counsel did not secure these people as witnesses. Callahan also alleges that more investigation would have shown that his "statement and other evidence" were unconstitutionally obtained.
In denying relief on this claim, the trial court wrote:
 "Callahan did not present any evidence to support any of these conclusory allegations. At the evidentiary hearing, Callahan did not present any evidence regarding the defense at the guilt phase; Callahan did not present any witnesses to show that he was severely intoxicated from drugs and alcohol on the night of the crime; Callahan did not present any evidence on how he would have handled the state witnesses differently; Callahan did not present any evidence to show that the statements were unconstitutionally obtained. Callahan has the burden to prove by a preponderance of the evidence the facts necessary to show that he is entitled to relief. Rule 32.3, A.R.Crim.P. Callahan has not met the burden of proof required by the Rules of Criminal Procedure."
(C.R. 591.) The trial court was correct; we adopt its findings on this issue as our own. Duncan v. State, 722 So.2d 795, 799
(Ala.Cr.App. 1998).
 Q.
Callahan argues that trial counsel presented a substandard theory of defense because he presented witnesses who testified that Callahan had known the victim before the crime. Callahan argues that such a defense was tantamount to no defense at all and resulted in his conviction.
In its order, the trial court noted that the presentation by the defense of witnesses who testified about the victim and Callahan knowing one another was not unreasonable because it supported Callahan's statements in which he claimed to have had a relationship with the victim. We agree.
Callahan presented no evidence to support his argument that, had trial counsel presented a different theory of defense, the result of the trial would have been different. Callahan has not met the burden of proof required by Rule 32.3, Ala.R.Crim.P., to prove the facts necessary to show that he was entitled to relief.Fortenberry v. State, 659 So.2d at 197.
 R.
Callahan argues that trial counsel was constitutionally ineffective for failing to present evidence of his intoxication that would have shown he could not have formed the requisite intent for murder. At the evidentiary hearing, Callahan did not call any witnesses, or even list any potential witnesses, who could have offered testimony concerning Callahan's drug or alcohol consumption on the day of the murder. Callahan did not meet his burden of proving by a preponderance of the evidence the facts necessary to show that he *Page 397 
is entitled to relief. Rule 32.3, Ala.R.Crim.P.; Fortenberry v. State,659 So.2d at 197.
 S.
Callahan argues that trial counsel's opening statement was so inadequate as to render counsel's assistance constitutionally ineffective. Specifically, Callahan argues that trial counsel did not proffer a theory of the defense during his opening statement and conceded in his opening that the district attorney "has put on a rather impressive listing of what he expects the evidence to show."
In its order denying relief, the trial court wrote:
 "While trial counsel did not present a theory of defense [in his opening statement], he did request that the jury not decide the case until they received all of the evidence. (R. 252-254.) Trial counsel also told the jury that most of the evidence presented by the prosecutor would be of a circumstantial nature. (R. 252-254.)
 "Callahan has not argued how he would have handled the opening statement differently, or how trial counsel's opening statement was inadequate. Callahan has not established that, if trial counsel had presented a different opening statement, the result of the trial would have been different. Strickland v. Washington, 466 U.S. at 694."
(C. 593.) The trial court was correct. Duncan v. State,722 So.2d at 799.
 T.
Callahan argues that trial counsel was constitutionally ineffective because he did not effectively cross-examine important prosecution witnesses. Callahan does not state, nor did he present any evidence at the evidentiary hearing, to support his bare allegation that the trial counsel's cross-examination was ineffective. He does not present any argument, nor did he present any evidence, indicating what weaknesses in the state's case would have been exposed by a different cross-examination. Callahan did not meet his burden of proving by a preponderance of the evidence the facts necessary to show that he is entitled to relief. Rule 32.3, Ala.R.Crim.P.; Fortenberry v. State, 659 So.2d at 197.
 U.
Callahan argues that trial counsel was constitutionally ineffective for failing to object to the admissibility into evidence of a photograph of the victim, a pillow found in his truck, tape recovered from the scene of the crime[4], and fingerprints taken from him. Callahan has presented no argument or any evidence to show how or why these items were inadmissible and what sort of argument trial counsel should have made to prevent those items from being admitted into evidence. Callahan did not meet his burden of proving by a preponderance of the evidence the facts necessary to show that he is entitled to relief. Rule 32.3, Ala.R.Crim.P.; Fortenberry v. State,659 So.2d at 197.
Callahan also argues that trial counsel should not have conceded that Paul Henninger, a witness who testified at the first trial, was unavailable at the second trial, allowing his prior testimony to be read into evidence. Other than a conclusory statement that Mr. Henninger was available for the second trial, Callahan has presented no evidence to support that allegation.
Callahan did not meet his burden of proving by a preponderance of the evidence the facts necessary to show that he is entitled to relief. Rule 32.3, Ala.R.Crim.P.; Fortenberry v. State, supra.
 V.
Callahan argues that trial counsel was constitutionally ineffective for not objecting to the following jury instructions:
1) the trial court's reasonable-doubt instruction, which, Callahan argues, impermissibly *Page 398 
shifted the burden of proof onto the defendant; 2) the trial court's presumption-of-innocence instruction, which, Callahan argues, failed to tell the jury that Callahan was presumed innocent throughout the trial; 3) the trial court's reasonable-doubt instruction, which, Callahan argues, incorrectly defined reasonable doubt as a doubt for which there is a "good reason" and in which, Callahan argues, the trial court improperly equated "reasonable doubt" with "moral certainty"; 4) the trial court's instruction on the voluntariness of Callahan's statements because, he says, the instruction did not make it clear that the jury must determine whether the statements were voluntary before considering them as evidence; 5) the trial court's instruction on how to regard lesser included offenses because, Callahan argues, it improperly discouraged the jury from considering lesser included offenses and because, according to Callahan, the instruction did not tell the jury that it could find Callahan guilty of both murder and kidnapping and still find him not guilty of capital murder, so long as the murder was not committed during the kidnapping; and, 6) the trial court's instruction on capital murder because, according to Callahan, the trial court erroneously used the term "coupled" instead of the word "during" in defining the capital offense. Callahan also argues that trial counsel should have argued that the cumulative effect of the trial court's instructions created error.
This court, in exercising its responsibility under Rule 45A, Ala.R.App.P., reviewed the trial court's instructions during the direct appeal, and found no plain error in any of the trial court's instructions. Reviewing them again in their totality, and in the context of ineffective assistance of the trial counsel, convinces us that our initial review of the trial court's instructions was correct. Trial counsel's failure to object to the above-listed jury instructions was not outside "the wide range of reasonably professional assistance." Nor has Callahan shown that, had trial counsel actually made the objections he now proffers, the result of the trial would have been any different.Strickland v. Washington, 466 U.S. at 689.
 W.
Callahan argues that the errors made by trial counsel, individually and collectively, denied him the effective assistance of counsel. As has been discussed previously in this opinion, Callahan has not met his burden of proof, i.e., he has not shown by a preponderance of the evidence, either individually or collectively, that he is entitled to relief. Rule 32.3, Ala.R.Crim.P. Callahan has not shown in a single instance that, but for the actions of trial counsel during the guilt phase of trial, the results of the trial would have been different.Strickland v. Washington, 466 U.S. at 689.
 II.
Callahan next raises the following issues regarding the alleged ineffective assistance of trial counsel during the sentencing phase of his trial:
 A.
Callahan argues that trial counsel was constitutionally ineffective for not conducting an adequate investigation in preparing for sentencing. Specifically, Callahan argues that had trial counsel conducted a more thorough investigation, he would have discovered sufficient mitigating evidence to ensure that Callahan did not receive the death penalty. Callahan argues that a better investigation would have revealed "many family members, friends, and other witnesses who were available to provide information to defense counsel and who were available to testify at [his] sentencing hearing." According to Callahan, these witnesses would have "testified about Mr. Callahan's severely dysfunctional family with no social service intervention, his sexually and physically abusive alcoholic father, his suicidal and chronically depressed passive *Page 399 
dependent mother, his history of chronic alcohol abuse, his history of closed head injuries, and his good behavior in and adjustment to prison."
In denying relief as to this claim, the trial court noted:
 "At the penalty phase, Callahan was represented solely by Harold P. Knight. Since Knight is deceased, there was no testimony presented at the evidentiary hearing about what kind of investigation was done to prepare for the penalty phase. Carolyn Callahan [Callahan's sister] was the only witness to testify for Callahan at the penalty phase. She pleaded with the jury to recommend a sentence of life without parole. R. 972-73. During her testimony, Carolyn Callahan made reference to Callahan's parents and why they were not present:
 "`Jimmy's daddy is dead. And Jimmy's mother is very, very ill; very ill. And she could not be here at all.' R. 972-73.
 " . . . The family members [Callahan alleges would have been available for trial counsel to interview and who would have testified on his behalf during the penalty phase] . . . are: Mary Callahan (mother), Sharon Henninger (sister), Paul Henninger (brother-in-law), Gary Callahan (brother), Mike Callahan (brother), Marie Callahan (sister-in-law), Lisa Callahan (sister-in-law), and Helen Hood (aunt). Despite specifically mentioning all of these family members, only Callahan's mother, Mary Callahan, testified at the Rule 32 evidentiary hearing. Court records showed that Sharon Henninger, Callahan's sister, was under subpoena but did not honor the subpoena and testify at the Rule 32 evidentiary hearing."
(C.R. 601-02.) The trial court noted that an expert witness for the defense opined that family members could have been too embarrassed to attend the hearing, and that the family members do not like Callahan. (C.R. 602.) The trial court found that "Callahan's present counsel was apparently no more successful than trial counsel in having the family members show up and testify for Callahan." (C.R. 603.) The trial court discounted the testimony of defense witness Joanne Terrell, a social worker, who testified as to what the above-listed family members told her about Callahan, because Ms. Terrell exhibited bias by interviewing only those family members and friends who would, allegedly, give favorable testimony on behalf of Callahan. The trial court credited the testimony of Dr. Kirkland, a state forensic psychologist, who determined that, whatever the degree of abuse in Callahan's family, it had no causal connection with Callahan's murder of Rebecca Howell. (C.R. 603-05.)
The trial court concluded:
 "None of the evidence presented by Callahan to support this claim established `that the balance of aggravating and mitigating circumstances did not warrant death.' Strickland v. Washington, 466 U.S. at 695. The evidence that Callahan presented to support this claim was not compelling and, if it had been presented at the penalty phase of the trial, it would not have changed the outcome of the proceedings."
(C.R. 605.) We agree. Callahan presented insufficient evidence to establish that trial counsel was not at least as diligent as counsel at the Rule 32 evidentiary hearing in investigating mitigating evidence. Callahan did not establish that additional investigation by trial counsel would have persuaded the listed family members to come forward and offer testimony favorable to Callahan. Even if other family members could have been persuaded to appear before the judge or jury at the penalty phase, there was no credible evidence presented at the Rule 32 evidentiary hearing that that testimony would have made any difference in establishing additional mitigating evidence.
 "There has never been a case where additional witnesses could not have been *Page 400 
called. . . . We refuse to set a standard that a court may be reversed because it did not hear unoffered testimony from still more friends and relatives. We also refuse to say that a member of the bar is guilty of ineffectiveness for not calling every witness and friend who was willing to testify."
State v. Tarver, 629 So.2d 14, 21 (Ala.Cr.App. 1993).
Based on the record before us, we cannot say that there is a reasonable probability that, but for counsel's actions, the results of the proceedings would have been different. We agree with the trial court that Callahan's trial counsel did not render ineffective assistance of counsel in this regard. Bui v. State,717 So.2d 6, 17-18 (Ala.Cr.App.), cert. denied, 717 So.2d 6
(Ala. 1998).
 B.
Callahan also argued that trial counsel was constitutionally ineffective for the following additional reasons:
1. That trial counsel's opening and closing arguments in the penalty phase were inadequate;
2. That trial counsel failed to make a closing argument in the sentencing hearing before the trial judge;
3. That trial counsel failed to object to the trial court's findings in its sentencing order, after, Callahan argues, the trial court failed to consider and find mitigating circumstances;
4. That trial counsel failed to object to the trial court's jury instructions at the sentencing phase;
5. That trial counsel did not argue that Callahan's death sentence was imposed as the result of a pattern of racial bias in Calhoun County and the State of Alabama.
In each of these claims of ineffective assistance, Callahan failed to present any evidence, other than conclusory arguments, that he was entitled to relief. Callahan did not meet his burden of proving by a preponderance of the evidence the facts necessary to show that he is entitled to relief. Rule 32.3, Ala.R.Crim.P.;Fortenberry v. State, 659 So.2d at 197.
Likewise, trial counsel's actions were not outside "the wide range of reasonably professional assistance." Callahan has not shown that, had trial counsel actually made the arguments and objections he now proffers, the result of the trial would have been any different. Strickland v. Washington, 466 U.S. at 689.
 C.
Callahan also argues that trial counsel was constitutionally ineffective because he failed to object to the imposition of the death penalty in this case because of the lack of a meaningful appellate review of proportionality in the State of Alabama and because he failed to argue that the means of effecuating the death penalty in Alabama, i.e., electrocution, is unconstitutional.
These issues have been decided adversely to Callahan's arguments. Davis v. State, 718 So.2d 1148, 1163 (Ala.Cr.App. 1995), cert. denied, 718 So.2d 1166 (Ala. 1998), cert. denied,525 U.S. 1179, 119 S.Ct. 1117 (1999); McNair v. State,706 So.2d 828, 846-47 (Ala.Cr.App.), cert. denied, 706 So.2d 828 (Ala. 1997), cert. denied, 523 U.S. 1064, 118 S.Ct. 1396 (1998). There is no legal reason for trial counsel to have made either objection before the trial court. Trial counsel's failure to make these objections was therefore not outside "the wide range of reasonable professional assistance." Strickland v. Washington,466 U.S. at 668.
 D.
Callahan argues that the cumulative effect of trial counsel's sentencing-phase errors denied him the effective assistance of counsel. Because we have already held that none of the ineffective assistance of counsel claims have merit, the cumulative effect cannot amount to ineffective assistance *Page 401 
of counsel. Callahan did not meet his burden of proving by a preponderance of the evidence the facts necessary to show that he is entitled to relief. Rule 32.3, Ala.R.Crim.P.; Fortenberry v.State, 659 So.2d at 197.
 III.
Callahan argues that his counsel on direct appeal was constitutionally ineffective. Specifically, Callahan lists the following issues which he claims his appellate counsel completely failed to research, prepare, raise, and argue:
1. Whether the statements used against Callahan for a second time at his second trial violated several legal and constitutional principles, including double jeopardy, res judicata, collateral estoppel, separation of powers and due process;
2 Whether Callahan's warrantless arrest was based on probable cause, and whether his arrest violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution, Article I, §§ I, V, VI, XIII, and XV of the Alabama Constitution;
3. Whether the prosecutor unconstitutionally used peremptory challenges in a racially discriminatory manner;
4. Whether black people and women were unconstitutionally underrepresented in the pool from which Callahan's jury venire and grand jury was selected;
5. Whether jurors were improperly excused for cause;
6. Whether a juror who was severely distressed at being sequestered improperly served on Callahan's jury;
7. Whether the prosecutor engaged in misconduct throughout Callahan's trial, including all of the examples listed in I.G. above;
8. Whether the indictment used against Callahan was duplicative and insufficiently definite;
9. Whether both Assistant District Attorney Joe Hubbard and Deputy Sheriff Max Kirby were improperly excluded from the rule on witnesses;
10. Whether critical portions of the proceedings, including bench conferences and in-chambers discussions, were not properly preserved for review on appeal;
11. Whether evidence presented in the form of testimony of Paul Henninger from the first trial was improperly admitted;
12. Whether the trial court gave improper instructions to the jury at the guilt phase and at the sentencing phase of the trial;
13. Whether the trial court improperly issued findings from the sentencing hearing that were virtually identical to the findings he made at Callahan's first trial in 1982;
14. Whether the trial court improperly failed to consider and to find the existence of mitigating circumstances;
15. Whether the imposition of the death penalty in this case is unconstitutional because it constitutes a disproportionate punishment under state and federal law;
16. Whether the manner of execution used by the state of Alabama constitutes cruel and unusual punishment;
17. Whether Callahan's death sentence was unconstitutionally sought and imposed pursuant to a pattern of racial bias; and
18. Whether the state failed to turn over to the defense exculpatory evidence in violation of Brady v. Maryland.
Callahan also listed a number of issues he claims his appellate counsel failed to adequately research, prepare, raise, and argue:
1. Whether Callahan's statements were improperly admitted into evidence;
2. Whether the trial court improperly denied Callahan's motion for a change of venue; *Page 402 
3. Whether the trial judge improperly denied Callahan's motion for recusal;
4. Whether the trial court improperly denied Callahan's motion to quash the indictment;
5. Whether the trial court improperly admitted into evidence a photograph of the victim;
6. Whether the trial court improperly admitted into evidence a pillow that, he argues, was obtained as the result of an illegal search; and
7. Whether Callahan was improperly sentenced to death.
In his brief to this court, Callahan incorporates by reference the arguments he made concerning the ineffective assistance of trial counsel on the same issues. He merely listed these allegations of ineffectiveness without presenting any additional argument or evidence. After listing these allegations of ineffectiveness, Callahan alleges that, had the issues been raised, or more adequately argued, the outcome of his appellate review on direct appeal would have been different.
In exercising its responsibility under Rule 45A, Ala.R.App.P., this court carefully reviewed Callahan's trial for plain error, including those concerns listed by Callahan. We determined the Callahan received a fair trial and affirmed the findings and sentence, accordingly. Callahan v. State,557 So.2d 1292 (Ala.Cr.App. 1989). Callahan has presented no evidence to support his allegations that, had appellate counsel raised the same issues he now argues, or had appellate counsel somehow argued differently the issues that were raised on direct appeal, the result of our decision would have been different. Callahan has the burden of proving by a preponderance of the evidence the facts necessary to show that he is entitled to relief. Rule 32.3, Ala.R.Crim.P. He has failed to meet that burden. Fortenberry v.State, 659 So.2d at 197.
 IV.
Callahan makes the following allegation of prosecutorial misconduct: "The prosecutor and other state officials did not make available to the defense the complete prosecution file and other materials exculpatory as to guilt and mitigating as to punishment, including statements from witnesses who identified someone other than Mr. Callahan as being at the crime scene, in violation of Ex parte Monk, 557 So.2d 832 (Ala. 1989), and state and federal requirements in capital cases."
Callahan presented no evidence to support this allegation that there had been a Brady violation. Callahan did not meet his burden of proving by a preponderance of the evidence the facts necessary to show that he is entitled to relief. Rule 32.3, Ala.R.Crim.P.; Fortenberry, supra.
 V.
Callahan argues that he is entitled to a new trial because of newly discovered evidence that a juror failed to disclose that he had previously sat on a jury in another, unrelated trial. The juror, H.S., was called at the Rule 32 evidentiary hearing and testified that he had previously served as a jury foreman in 1978 "on a murder case involving John Sparks." He further testified that, if the record disclosed that he did not respond to a question concerning prior jury duty, he did not hear the question and that his failure to respond was not an attempt to conceal his prior jury duty. (R. 38-39.)
Callahan argues that the failure of H.S. to disclose this information at trial deprived him of his right to be tried by an impartial jury and his "right to have questions answered truthfully by prospective jurors."
We agree with the finding of the trial court that this claim should have been, but was not, raised on appeal and that it is therefore precluded under Rule 32.2(a)(5), Ala.R.Crim.P. To constitute newly discovered evidence, the facts relied upon must *Page 403 
not be "known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence." Rule 32.1(e)(1), Ala.R.Crim.P. Callahan's "newly discovered evidence" is unlike that in State v. Freeman, 605 So.2d 1258 (Ala.Cr.App. 1992), where the petitioner showed that, with the exercise of reasonable diligence, the evidence that a juror had failed to disclose that he was a former police officer was not discovered until one week before the Rule 32 evidentiary hearing. Callahan has made no showing at all that, through the exercise of reasonable diligence, H.S.'s prior service as a juror would not have been readily discoverable at trial or shortly thereafter so that this issue could have been raised on appeal. Callahan has failed to meet his burden of proof and has not shown that H.S.'s failure to disclose he had prior jury duty was newly discovered evidence. This ground is, therefore, precluded. State v.Whitley, 665 So.2d 998, 1000 (Ala.Cr.App. 1995); King v. State,729 So.2d 366 (Ala.Cr.App. 1998).
Callahan also presents an additional argument that the trial court erred in not considering an affidavit from another juror at Callahan's trial. That affidavit, Callahan argues, shows that the jury considered extraneous evidence to learn that Callahan had been convicted and sentenced to death at an earlier trial. The trial court, in its order, discussed the proffered affidavit:
 "The Court declined to admit the affidavit which is a matter of discretion of the court. Rule 32.9(a), A.R.Crim.P. The admission of the affidavit would have denied the State its right to cross-examine the witness. Additionally, the State did not know of the existence of the affidavit until the evidentiary hearing, so the State was also deprived of the opportunity to prepare a counter affidavit."
(C.R. 616.) We have reviewed the proffered affidavit, provided to this court under seal. We cannot say the trial court abused its discretion when it refused to consider the affidavit in the absence of evidence that the affiant was actually unavailable, especially considering that the testimony was offered in such a fashion, in violation of the court's discovery order. Presenting the testimony by affidavit prevented the State from confronting the affiant, and did not allow the trial court the opportunity to closely examine the complete testimony of this juror. Rule 32.9(a), Ala.R.Crim.P.
 VI.
Callahan presents the following allegations of substantive error that, he argues, were made at trial:
1. That Callahan's warrantless, three-day detention for a petty traffic offense was a subterfuge for an arrest that was not based on probable cause;
2. That the trial court improperly denied Callahan's motion for a change of venue;
3. That Callahan's statements were improperly and unconstitutionally used against him;
4. That the indictment used against Callahan was duplicative and was insufficiently definite to inform him of the offense with which he was charged;
5. That the trial court gave the following improper jury instructions and committed other errors:
 a. The trial court's reasonable doubt instruction improperly shifted the burden of proof;
 b. The trial court's presumption of innocence instruction was improper;
 c. The trial court's reasonable doubt instruction was improper;
 d. The trial court improperly instructed the jury regarding the voluntariness of Callahan's statements; *Page 404 
 e. The trial court improperly instructed the jury regarding its consideration of lesser included offenses;
 f. The trial court's capital murder instruction was improper;
g. The trial court improperly excused jurors for cause;
 h. The trial court failed to excuse a juror who was severely distressed at being sequestered;
 i. The trial court improperly allowed two state witnesses to sit at counsel table;
 j. The trial court improperly admitted into evidence a photograph of the victim, a pillow, and Paul Henninger's testimony from the first trial; and
 k. The cumulative effect of all these errors entitled Callahan to a new trial.
6. That the trial court improperly failed to consider and to find the existence of mitigating circumstances;
7. That Callahan was deprived of a fair trial by the state's racially discriminatory use of peremptory challenges;
8. That the prosecutor engaged in the following acts of misconduct throughout the trial:
 a. The prosecutor improperly urged the jury to consider religion and the impact of the crime on the victim's family;
 b. The prosecutor improperly expressed his personal opinions to the jury;
 c. The prosecutor improperly urged the jury to ignore lesser included offenses;
 d. The prosecutor improperly urged the jury to convict Callahan for inappropriate and irrelevant reasons;
 e. The prosecutor incorrectly told the jury that the Equal Protection Clause applies to victims of crime; and
 f. The cumulative effect of prosecutorial misconduct entitles Callahan to a new trial.
9. That the trial court failed to ensure that all of the proceedings were transcribed;
10. That blacks and women were underrepresented in the pools from which Callahan's jury venire and grand jury were selected;
11. That the imposition of the death penalty in this case constituted a disproportionate punishment under state and federal law;
12. That the manner of execution used by the State of Alabama constitutes cruel and unusual punishment;
13. That Callahan's death sentence is unconstitutional because it was sought and imposed pursuant to a pattern of racial bias in Calhoun County and the State of Alabama; and
14. That the trial judge should have recused himself from presiding over Callahan's trial.
These claims are precluded from our review because they were either raised at trial or on appeal, Rule 32.2(a)(2) and (4), Ala.R.Crim.P., or could have been raised at trial or on appeal and were not, Rule 32.2(a)(3) and (5), Ala.R.Crim.P. Thompson v.State, 615 So.2d 129, 131 (Ala.Cr.App. 1992), cert. denied,615 So.2d 129 (Ala. 1993), cert. denied, 510 U.S. 976 (1993).
After evaluating the evidence presented at the evidentiary hearing on Callahan's petition for post-conviction relief and studying the trial court's well-reasoned and carefully drafted order, we conclude that the trial court correctly denied the petition.
AFFIRMED.
Long, P.J., McMillan, and Fry, JJ., concur. Baschab, J., concurs in result only.
[1] A complete recitation of the facts can be found in Callahanv. State, 557 So.2d 1292, 1295 (Ala.Cr.App. 1989).
[2] Although Callahan fully explains his argument only as to this one comment, he also points to five other places in the trial transcript where he alleges the prosecutor expressed his personal opinion through phrases "I think" or "I believe."
[3] We also note that, on direct appeal, this court reviewed the issue whether the trial court erred in not quashing the indictment because it was the result of an allegedly illegal arrest and subsequent search. In our review of the indictment, which included a plain error review pursuant to Rule 45A, Ala.R.App.P., we rejected that argument.
[4] The victim's hands were tightly bound by four pieces of three-inch wide tape. *Page 405